**CONSUMER LITIGATION LAW CENTER, APC**
September J. Katje, Esq., State Bar No. 227896
sk@consumerlitigationlawcenter.com
Fernando C. Saldivar, Esq, State Bar No. 241035
fs@consumerlitigationlawcenter.com
100 North Citrus Ave., Suite 408
West Covina, California 91791
Phone: (800) 787-5616 || Fax: (888) 909-7947

Attorneys for Plaintiffs TITO AGUIRRE and YOLANDA AGUIRRE

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

TITO AGUIRRE, an individual, and
YOLANDA AGUIRRE, an individual,

              Plaintiffs,

    v.

WELLS FARGO BANK, NATIONAL
ASSOCIATION, a National Bank;
NDEX WEST, LLC, a Texas Limited
Liability Company; and all persons or
entities unknown claiming any legal or
equitable right, title, estate, lien or
interest in the property described in this
complaint adverse to Plaintiff's title
thereto; and DOES 1 through 25,
inclusive,

              Defendants.

Case No.: 2:15-cv-01816-GHK-MRW

Verified First Amended Complaint For:

1. Fraud in Loan Servicing
2. Failure to Engage in Loss Mitigation (Cal. *Civ. Code* § 2923.55)
3. Misapplication of Late Fees During Loan Modification Review (Cal. *Civ. Code* § 2924.11)
4. Breach of Contract
5. Breach of Implied Covenant of Good Faith and Fair Dealing
6. Promissory Estoppel
7. Negligence in Loan Servicing
8. Violation of Cal. *Bus. & Prof. Code* § 17200, et seq. in Loan Servicing
9. Violation of Truth in Lending Act (12 C.F.R. § 1026.36(c))
10. Violation of Fair Debt Collection Practices Act (15 U. S. *Code* § 1962d)
11. Quiet Title
12. Declaratory Relief

    And Demand For Jury Trial

1

**VERIFIED FIRST AMENDED COMPLAINT**

NOW COMES the Plaintiffs TITO AGUIRRE and YOLANDA AGUIRRE ("Plaintiffs"), complaining of the Defendants, and each of them, for the following:

## I.

## <u>INTRODUCTION</u>

1.     This is an action filed for misconduct related to Defendants' wrongful acts and omissions during the loan servicing and foreclosure process on the note and all riders and addendums thereto secured by deed of trust to Plaintiffs' primary residence.

2.     As described below, Defendants are engaged in unauthorized foreclosure proceedings and have mishandled Plaintiffs' applications for loss mitigation assistance.  Each of the allegations regarding Defendants contained herein applies to instances in which one or more, and in some cases all, of the Defendants engaged in the conduct alleged herein.

## II.

## <u>THE PARTIES</u>

3.     Plaintiffs TITO AGUIRRE and YOLANDA AGUIRRE ("Plaintiffs") are, and at all times herein mentioned were, residents of the State of California, County of Los Angeles.  Plaintiffs, at all times relevant to this Complaint, were the owners of their primary residence commonly known as 638 Molinar Avenue, La Puente, California 91744 ("Subject Property").[1]

4.     WELLS FARGO BANK, NATIONAL ASSOCIATION, a National Bank ("Wells Fargo"), was and is a Commercial Bank whose charter is approved by the Office of the Comptroller of the Currency rather than by a State Banking Department, and is qualified to do business in the state of California as a

_____

[1]  Legal Description: Lot 34 of Tract No. 19348, in the City of La Puente, County of Los Angeles, State of California, as per map recorded in Book 538, page(s) 32 to 35 inclusive of Maps, in the office of the County recorder of said County.

APN: 8251-021-020

CONSUMER LITIGATION LAW CENTER, APC

**VERIFIED FIRST AMENDED COMPLAINT**

residential home loan servicer and is the current servicer of the note secured by deed of trust that is the subject of this litigation.  Wells Fargo is the successor-in-interest to Plaintiffs' original lender, World Savings Bank, FSB, a Federal Savings Bank ("World Savings"), which Wachovia Corporation ("Wachovia") acquired in October 2006, which Wells Fargo acquired in turn in October 2008.  Plaintiffs are also informed, believe, and thereon allege that Wells Fargo is the current beneficiary of the note and deed of trust that is the subject of this litigation and is also Plaintiffs' loan servicer.  A true and correct loan statement dated November 17, 2014 identifying Wells Fargo as Plaintiffs' servicer is attached hereto as Exhibit "A".

5.     NDEX WEST, LLC, a Texas Limited Liability Company ("NDEX West"), was and is a Texas Limited Liability Company doing business in the state of California and is the current foreclosure trustee of record under the deed of trust that is the subject of this litigation.  A true and correct copy of a substitution of trustee recorded on February 25, 2013 replacing Golden West Savings Association Service Co. with NDEX West as the trustee under the deed of trust that is the subject of this litigation is attached hereto as Exhibit "B".

6.     Plaintiffs are informed, believe, and thereon allege that at all times material hereto, all Defendants operated through a common plan and scheme designed to conceal the material facts set forth below from Plaintiffs, from the California public, and from regulators, either directly or as successors-in-interest or affiliates of other Defendants.  The concealment was completed, ratified and/or confirmed by each Defendant herein, directly or as successor, agent, assignee or affiliate to another Defendant.  Each Defendant was a perpetrator of the tortious acts set forth herein for its own monetary gain and as a part of a common plan developed and carried out with the other Defendants, or was a successor-in-interest to a Defendant or entity that did the foregoing.

/ / /

CONSUMER LITIGATION LAW CENTER, APC

**VERIFIED FIRST AMENDED COMPLAINT**

7.     The Defendants that knowingly participated in the scheme are jointly and severally liable for their acts in devising, directing, knowingly benefitting from and ratifying the wrongful acts of the knowing participants.

8.     Plaintiffs are informed, believe, and thereon allege that Wells Fargo aided and abetted all acts and omissions alleged herein that were committed by NDEX West and by World Savings and Wachovia.

9.     Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 25, inclusive ("Does") and, therefore, sue these Defendants by such fictitious names.  Plaintiffs will amend their Complaint to allege these Defendants' true names and capacities when ascertained.  Plaintiffs are informed,  believe, and thereon  allege that each of the fictitiously named Defendants are responsible in some manner for the injuries to Plaintiffs alleged herein and that such injuries were proximately caused by such Defendants.

## III.

## TENDER IS NOT REQUIRED

10.     Tender of the full outstanding debt is not required. There is no bright-line rule requiring tender of the unpaid debt to set aside a sale.  *Storm v. America's Servicing Company* (S.D.Cal. Nov. 6, 2009, No. 09CV1206-IEG (JMA)) 2009 WL 3756629 at *6 fn. 9.  ". . . [T]ender is a "matter of discretion left up to the Court."  *Id.* at *6.  Even if tender were expressly required anywhere, there is no requirement that tender be pled because "at the procedural stage the Court only decides whether the plaintiff has pleaded "enough facts to state a claim to relief that is plausible on its face."  *Id.* (quoting *Bell Atl. Corp. v. Twombly* (2007) 550 U.S. 544, 547.)  Further, requiring Plaintiffs to allege tender would affirm the underlying debt and invalidate Plaintiff's claims.  See *Onofrio v. Rice* (1997) 55 Cal. App. 4th 413, 424.  Plaintiff's claims for fraud and unfair and deceptive acts challenge the underlying debt.  In addition, the general equitable exception to the

**VERIFIED FIRST AMENDED COMPLAINT**

CONSUMER LITIGATION LAW CENTER, APC

tender rule should be applied as such a requirement would evidence injustice and a hardship. *Humboldt Sav. Bank v. McCleverty* (1911) 161 Cal. 285, 291.

11.     As explained further below, Plaintiffs are alleging that the outstanding debt is the product of unfair and deceptive business practices with respect to foreclosure under the deed of trust, and is therefore disputing the debt and need not tender or allege tender at this stage of litigation.

## IV.

## JURISDICTION AND VENUE

12.     This matter was originally filed by Plaintiff Tito Aguirre in the Superior Court of the State of California for the County of Los Angeles, Case No. KC067406, on January 28, 2015. Defendants removed this case to the United States District Court for the Central District of California on March 12, 2015.

13.     This Court has personal jurisdiction over this matter pursuant to the California Constitution, Article XI, Section 10 and California *Code of Civil Procedure* section 410.10 because Defendants transacted business in this District and committed the acts complained of herein in California.

14.     Venue is proper in this District pursuant to California *Code of Civil Procedure* section 395.5 because Defendants entered into the underlying contract with Plaintiff in the above-referenced jurisdiction and the payment obligations are to be performed in the above-referenced District.

## V.

## FACTUAL ALLEGATIONS

15.     On or about May 12, 2006, Plaintiff Tito Aguirre executed a deed of trust and "Adjustable Rate Mortgage Note Pick-A-Payment Loan" ("Loan Agreement"). The deed of trust was recorded in Los Angeles County, California on May 23, 2006 and a true and correct copy of the recorded deed of trust is attached hereto as Exhibit "C". A true and correct copy of the "Adjustable Rate Mortgage Note Pick-A-Payment Loan" is attached hereto as Exhibit "D".

**VERIFIED FIRST AMENDED COMPLAINT**

16.   When Plaintiff Tito Aguirre was approximately three months behind on his payments then due on the Loan Agreement, plus any late fees and charges that had accrued at the time, Plaintiff Tito Aguirre contacted his servicer Wells Fargo and obtained a quote of the exact dollar amount required to bring the loan current again.

17.   Plaintiff Tito Aguirre had the required cash on hand to bring the loan current, but when he called Wells Fargo again to inquire as to where and how to make the payment to bring the loan current, a Wells Fargo representative told him that Wells Fargo refused to take his payment and that he would have to "get a lawyer."

18.   Since then, Plaintiff Tito Aguirre has fallen further into default because he could not have sufficient funds to bring the loan current when he was more than three months behind on the Loan Agreement after Wells Fargo refused to accept Plaintiff's funds to bring the Loan Agreement current from the amount past due.

19.   In the meantime, Wells Fargo has harassed Plaintiff Tito Aguirre with endless phone calls attempting to collect the debt allegedly due on the Loan Agreement, despite the fact that Wells Fargo in the past refused to let Plaintiff bring the loan current.

20.   Wells Fargo, through NDEX West, recorded a notice of default on the Subject Property on March 13, 2013 ("NOD").  A true and correct copy of the NOD is attached hereto as Exhibit "E".

21.   Wells Fargo, through NDEX West, then recorded a notice of trustee's sale on the Subject Property on June 14, 2013 ("06/14/2013 NTS").  A true and correct copy of the 06/14/2013 NTS is attached hereto as Exhibit "F".

22.   Wells Fargo, through NDEX West, then recorded a notice of trustee's sale on the Subject Property on September 27, 2013 ("09/27/2013 NTS").  A true and correct copy of the 09/27/2013 NTS is attached hereto as Exhibit "G".

CONSUMER LITIGATION LAW CENTER, APC

**VERIFIED FIRST AMENDED COMPLAINT**

# FIRST CAUSE OF ACTION

## FRAUD IN LOAN SERVICING

### (Against Wells Fargo, NDEX West, and Does 1–25)

23.　Plaintiffs hereby reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

24.　When Plaintiff Tito Aguirre was three months in arrears on his monthly payment obligations, on or about February 2013, he contacted Wells Fargo to inquire about the reinstatement of the subject loan.

25.　Defendants, through Wells Fargo, represented to Plaintiff Tito Aguirre that if Plaintiff made the full reinstatement amount to Wells Fargo, Plaintiff's account would be brought current.

26.　Plaintiff Tito Aguirre is informed, believes, and thereon alleges that Wells Fargo's representation was false because when Plaintiff produced the exact dollar amount to Wells Fargo within the operative timeframe in attempt to bring the loan current, Wells Fargo refused to accept Plaintiff's payment without justification and Plaintiff's account remained in default.

27.　Plaintiffs are informed, believe, and thereon allege that Wells Fargo did or had reason to know that the representation was false because Wells Fargo had no intention to accept Plaintiff Tito Aguirre's reinstatement payment or to reinstate the loan and wanted to instead foreclose on the Subject Property and profit thereby.

28.　Plaintiffs are informed, believe, and thereon allege that, Wells Fargo intended for Plaintiff to rely on their representation made as the loan servicer that Plaintiff Tito Aguirre's default would be corrected if Plaintiff made the full reinstatement amount because Plaintiff has always made his payments under the Loan Agreement except those which he was excused from performing or prevented from performing based on the acts and omissions of Wells Fargo.

/ / /

CONSUMER LITIGATION LAW CENTER, APC

**VERIFIED FIRST AMENDED COMPLAINT**

29.     Plaintiff Tito Aguirre reasonably relied on Wells Fargo's representation as the loan servicer because Plaintiff offered the full reinstatement payment to Wells Fargo.

30.     Plaintiff Tito Aguirre was injured in his reliance on Wells Fargo's knowingly false representations because Plaintiffs are losing their home through foreclosure in reliance on Wells Fargo's representations that Plaintiff would be able to correct the default by making the required reinstatement amount.

31.     As a result of Plaintiff Tito Aguirre's reliance on Wells Fargo's misrepresentations, Plaintiffs have suffered and continue to suffer pecuniary damages due to excessively high mortgage payments, an increasing principal balance, threatened loss of the Subject Property, mounting fees, costs and penalties.

32.     Plaintiffs are entitled to actual damages in an amount to be proven at time of trial but not less than the jurisdictional minimum of this Court.

33.     Plaintiffs are further entitled to punitive damages to punish and deter Defendants from such outrageous, reckless conduct, and to deter other lenders, servicers, and originators who are likely to commit similarly reckless acts and omissions in the future.

34.     Plaintiffs are therefore entitled to such relief as is set forth in this Cause of Action and to such further relief set forth below in the section captioned Prayer for Relief which is by this reference incorporated herein.

## SECOND CAUSE OF ACTION

### FAILURE TO ENGAGE IN LOSS MITIGATION

### (Cal. *Civ. Code* § 2923.55)

### (Against Wells Fargo, NDEX West, and Does 1–25)

35.     Plaintiffs hereby reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

/ / /

CONSUMER LITIGATION LAW CENTER, APC

36.     A mortgage servicer, mortgagee, beneficiary, or authorized agent may not record a notice of default until thirty days after contacting the borrower to discuss loss mitigation options, including advising the borrower of his right to request a subsequent meeting, conducting the subsequent meeting within fourteen days of the request, and providing the borrower with a toll-free number to contact a United States Department of Housing and Urban Development ("HUD") certified counseling agency. Cal. *Civ. Code* § 2923.55(b)(2).

37.     Furthermore, if unable to contact the borrower to discuss the loss mitigation options mentioned above, alternatively, the loan servicer must satisfy various due diligence requirements by providing contact information for a HUD-certified counseling agency, following up by phone three times at different hours and on different days, and following up two weeks later with a certified letter, return receipt requested that also contains the contact information for a HUD-certified counseling agency. Cal. *Civ. Code* § 2923.55(f)(1)–(3). The servicer must also provide a means for the borrower to contact a live representative of the servicer by phone, must post a link on its website with options to avoid foreclosure, must provide a toll-free phone number on its website that the borrower can call to discuss options to avoid foreclosure, and provide a phone number for a HUD-certified housing counseling agency on its website. Cal. *Civ. Code* § 2923.55(f)(4)–(5).

38.     In addition, the servicer may only conduct a trustee's sale after providing the borrower with a statement that the borrower may request counseling at particular agencies if the borrower is a service member or dependent thereof, and after providing the borrower a statement that the borrower may request certain documents related to the borrower's note, deed of trust, and payment history. Cal. *Civ. Code* § 2924.55(b)(1)(A).

/ / /

/ / /

**VERIFIED FIRST AMENDED COMPLAINT**

39.     Plaintiff Tito Aguirre is informed, believes, and thereon alleges that he never received a written statement regarding counseling and options to avoid foreclosures for service members or their dependents from Wells Fargo, conduct which constitutes a material violation of the applicable statute.

40.     Plaintiff Tito Aguirre is informed, believes, and thereon alleges that he never received a written statement that he could request documents related to his loan, deed of trust, and payment history from Wells Fargo, conduct which constitutes a material violation of the applicable statute.

41.     Plaintiff Tito Aguirre is informed, believes, and thereon alleges that Wells Fargo never contacted him by phone to discuss options to avoid foreclosure and never informed him of his right to request any subsequent meeting, conduct which constitutes a material violation of the applicable statute..

42.     Plaintiff Tito Aguirre is informed, believes, and thereon alleges that he never received any follow up phone call from Wells Fargo—let alone on three different days, conduct which constitutes a material violation of the applicable statute.

43.     Plaintiffs are therefore entitled to injunctive relief under *Civil Code* section 2924.12 (a) enjoin any trustee's sale scheduled on the Subject Property pending unresolved issues addressed herein, entitled to the greater of treble damages or statutory damages of fifty thousand dollars ($50,000.00) under *Civil Code* section 2924.12(b) should defendants actually sell the Subject Property at a trustee's sale, and such further relief as set forth in the section captioned Prayer for Relief which is by this reference incorporated herein in an amount no less than the jurisdictional minimum of this Court.

/ / /

/ / /

/ / /

/ / /

**VERIFIED FIRST AMENDED COMPLAINT**

CONSUMER LITIGATION LAW CENTER, APC

## THIRD CAUSE OF ACTION

**MISAPPLICATION OF LATE FEES DURING A LOAN MODIFICATION REVIEW**

**(Cal. *Civ. Code* § 2924.11)**

**(Against Wells Fargo, NDEX West, and Does 1–25)**

44.     Plaintiffs hereby reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

45.     The mortgage servicer is strictly prohibited to collect any late fees for periods during which a complete first lien loan modification application is under consideration or a foreclosure prevention alternative is being evaluated or exercised under *Civil Code* section 2924.11(f).

46.     As stated in Defendants' own records, the subject loan had been under review for loss mitigation options from July 29, 2010 through August 22, 2014.  Plaintiff Tito Aguirre is therefore informed, believes, and thereon alleges that Defendants improperly charged Plaintiff for the statutorily forbidden late fees accrued during the periods of loss mitigation attempts, and such late fees were added onto Plaintiff's unpaid principal balance.

47.     Plaintiff is therefore entitled to a removal of the charges of misapplied late fees from his unpaid principal balance.

48.     Plaintiffs are further entitled to injunctive relief under *Civil Code* section 2924.12 to (a) enjoin any trustee's sale scheduled on the Subject Property pending unresolved issues addressed herein, entitled to the greater of treble damages or statutory damages of fifty thousand dollars ($50,000.00) under *Civil Code* section 2924.12(b) should defendants actually sell the Subject Property at a trustee's sale, and such further relief as set forth in the section captioned Prayer for Relief which is by this reference incorporated herein in an amount no less than the jurisdictional minimum of this Court.

/ / /

CONSUMER LITIGATION LAW CENTER, APC

**VERIFIED FIRST AMENDED COMPLAINT**

# FOURTH CAUSE OF ACTION

## BREACH OF CONTRACT

### (Against Wells Fargo, NDEX West, and Does 1–25)

49.     Plaintiffs hereby reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

50.     Plaintiff Tito Aguirre and Defendants entered into a contract, the Deed of Trust, on May 12, 2006.  A true and correct copy of the "Deed of Trust dated May 12, 2006" is attached hereto as Exhibit "C".

51.     Pursuant to Covenants III of the Deed of Trust, Defendants must apply each of Plaintiff's payments to pay the amounts due, principal due, or late charges due under the Loan Agreement.

52.     Plaintiff Tito Aguirre requested a reinstatement quote from Defendants when he was three month behind in payments.

53.     Plaintiffs are informed, believe, and thereon allege that Defendants supplied the requested reinstatement amount to Plaintiff.

54.     Plaintiff prepared the exact required funds and offered timely to Defendants in attempt to correct the default.

55.     Plaintiffs are informed, believe, and thereon alleges that Defendants refused to accept Plaintiff's timely reinstatement payment.

56.     Plaintiff Tito Aguirre has substantially performed his obligations in accordance with the Deed of Trust until he experienced temporary financial stress by missing three payments.  However, he immediately attempted to remedy the default in good faith by requesting to reinstate the loan with the full required amount.

57.     In contrast, Defendants provided Plaintiff Tito Aguirre with a reinstatement quote knowing Plaintiff intended to make the required payment and bring the loan current, yet failed to accept Plaintiff's reinstatement payment with no good cause.

**VERIFIED FIRST AMENDED COMPLAINT**

58.     Plaintiff Tito Aguirre was unable to make the reinstatement payment, thereby excusing him from performing pursuant to the Deed of Trust, when Defendants refused to take the payment, requiring the loan to go further into default.

59.     No notice of default was recorded at the time Plaintiff Tito Aguirre offered the full reinstatement payment.

60.     Plaintiffs are informed, believe, and thereon allege that no foreclosure action was initiated by Defendants at the time when Defendants refused to take Plaintiff's payment to reinstate the loan.

61.     In accordance with the explicit terms of the Deed of Trust, Defendants were obligated to accept each payment made by Plaintiff Tito Aguirre and further apply such payment onto the subject loan for the purpose of paying off the underlying debt.

62.     Plaintiffs are therefore informed, believe, and thereon allege that Defendants' failure to accept Plaintiff Tito Aguirre's payment in 2012 without justification and further apply the amounts due, principal due, and late charges in order to bring the loan current is a direct breach of contract.

63.     Due to Defendants' breach, Plaintiff Tito Aguirre has suffered and continues to suffer pecuniary damages due to excessively high mortgage payments, an increasing principal balance, threatened loss of the Subject Property, mounting fees, costs and penalties.

64.     Plaintiffs are entitled to general and special damages in an amount to be proven at time of trial but not less than the jurisdictional minimum of this Court.

65.     Plaintiffs are further entitled to such relief as is set forth in this Cause of Action and to such further relief set forth below in the section captioned Prayer for Relief which is by this reference incorporated herein.

/ / /

CONSUMER LITIGATION LAW CENTER, APC

**VERIFIED FIRST AMENDED COMPLAINT**

# FIFTH CAUSE OF ACTION

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### (Against Wells Fargo, NDEX West, and Does 1–25)

66.     Plaintiffs hereby reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

67.     Plaintiff Tito Aguirre and Defendants entered into a deed of trust on May 12, 2006.

68.     California law implies a covenant of good faith and fair dealing beyond the express terms of a written agreement in all contracts.

69.     The covenant provides that the parties to a contract are bound not only by the express covenants of the agreement, but also by the implied covenant of good faith and fair dealing. The covenant of good faith and fair dealing is further implied in every contract to prevent one party from unfairly frustrating the other party's rights to the benefits of the agreement.

70.     At all times, Plaintiff Tito Aguirre acted in good faith in attempt to bring the Loan Agreement current when he approached Defendants requesting for a reinstatement quote.

71.     At all times, Plaintiff Tito Aguirre was able, ready, and willing to make the reinstatement payment in full when he was merely three months behind.

72.     Plaintiffs are informed, believe, and thereon allege that Defendants failed to accept Plaintiff Tito Aguirre's payment in good faith when Plaintiff produced the required amount to reinstate the loan.

73.     Plaintiffs are informed, believe, and thereon allege that Defendants further continued to fail to act in good faith as it proceeded with foreclosure of the Subject Property when the loan could have been brought current had Defendants accepted Plaintiff Tito Aguirre's reinstatement payment in 2012.

/ / /

**VERIFIED FIRST AMENDED COMPLAINT**

CONSUMER LITIGATION LAW CENTER, APC

74.     As a result of the actions of Defendants set forth hereinabove, Plaintiffs are entitled to general and special damages in an amount to be proven at time of trial but not less than the jurisdictional minimum of this Court.

75.     Plaintiffs are further entitled to such relief as is set forth in this Cause of Action and to such further relief set forth below in the section captioned Prayer for Relief which is by this reference incorporated herein.

## SIXTH CAUSE OF ACTION
## PROMISSORY ESTOPPEL
### (Against Wells Fargo, NDEX West, and Does 1–25)

76.     Plaintiffs hereby reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

77.     On or about February 2013, , when Plaintiff Tito Aguirre was approximately three months in arrears, Plaintiff requested from Defendants, through Wells Fargo, a reinstatement quote that would bring the Loan Agreement current.

78.     Plaintiffs are informed, believe, and thereon allege that Wells Fargo in turn responded to Plaintiff Tito Aguirre with a reinstatement amount providing that once Plaintiff Tito Aguirre made the full amount required within the applicable period Defendants would take the account out of default status.

79.     Wells Fargo's representation was clear and unambiguous that the subject loan would be brought current if Plaintiff Tito Aguirre made the required reinstatement amount.

80.     In reliance on Wells Fargo's representation, Plaintiff Tito Aguirre made the exact amount required for a reinstatement.  However, Wells Fargo refused to take the payment and further refuse to reinstate the loan.

81.     Plaintiff Tito Aguirre reasonably relied on Wells Fargo's promise because he wanted to correct the default and keep his home.  Plaintiff's reliance was also foreseeable because Defendants are Plaintiff's loan servicer.

**VERIFIED FIRST AMENDED COMPLAINT**

82.     Plaintiffs are informed, believe, and thereon allege that Wells Fargo breached that promise by refusing to accept Plaintiff Tito Aguirre's payment and further failing to apply the payment onto the amount due.

83.     As a direct and proximate result of Wells Fargo's failure to perform according to their representation, Plaintiff Tito Aguirre has been damaged in that the loan is further in default due to accrued interests and late fees.  He is also now facing loss of his home through foreclosure that he would not be facing had Wells Fargo honored their promise.

84.     Plaintiffs are entitled to injunctive relief enjoining any trustee's sale scheduled on the Subject Property to avoid injustice, to general and special damages a result of Wells Fargo's breach of its promise, and such relief as is set forth in this Cause of Action and to such further relief set forth below in the section captioned Prayer for Relief which is by this reference incorporated herein.

## SEVENTH CAUSE OF ACTION

## NEGLIGENCE IN LOAN SERVICING

### (Against Wells Fargo, NDEX West, and Does 1–25)

85.     Plaintiffs hereby reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

86.     The California Court of Appeal now recognizes that a lender owes a borrower a duty to exercise reasonable care while processing a loan modification application, regardless of the results of the review. (*Alvarez v. BAC Home Loans Servicing, LP* (2014) 228 Cal.App.4th 941, 947-948.) Absent contrary instructions from the California Supreme Court this remains controlling authority and should be applied as such by the United States District Court in an action governed by California law.

/ / /

/ / /

/ / /

**VERIFIED FIRST AMENDED COMPLAINT**

CONSUMER LITIGATION LAW CENTER, APC

87.     Plaintiffs are informed, believe, and thereon allege that Wells Fargo and NDex West had a contractual duty to exercise reasonable care and skill as the servicers and foreclosure trustees of the Loan Agreement or the successors thereto.

88.     Defendants breached their duty to Plaintiff Tito Aguirre when Defendants failed to accept Plaintiff's timely payment for a reinstatement.

89.     Defendants breached their duty when they improperly applied late fees during a loan modification review.

90.     The harm that Plaintiffs suffered was reasonably foreseeable to Defendants in that their failure to accept the reinstatement payment from Plaintiff Tito Aguirre would directly result in the initiation of foreclosure proceedings with the eventual result of Plaintiffs' potential loss of their home.

91.     The acts and omissions of Defendants were both the actual and proximate cause of Plaintiffs' injury because, but for Defendants wrongfully refusing to accept Plaintiff Tito Aguirre's timely reinstatement payment, Plaintiffs would have been able to correct the default and therefore bring the account current.  Moreover, Plaintiffs would not have suffered the extreme emotional distress of facing loss of their home.

92.     Plaintiffs are therefore entitled to general and special damages in an amount to be proven at time of trial, but in any event no less than the jurisdictional minimum of this Court.

93.     Plaintiffs are further entitled to such relief as is set forth in this Cause of Action and to such further relief set forth below in the section captioned Prayer for Relief which is by this reference incorporated herein.

/ / /

/ / /

/ / /

/ / /

**VERIFIED FIRST AMENDED COMPLAINT**

**EIGHTH CAUSE OF ACTION**

**VIOLATION OF *BUS. & PROF. CODE* §§ 17200, ET SEQ. IN LOAN SERVICING**

**(Against Wells Fargo, NDEX West, and Does 1–25)**

94.   Plaintiffs hereby reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

95.   California *Business & Professions Code* section 17200, California's Unfair Competition Law ("UCL"), prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. *Bus. & Prof. Code* § 17200 (emphasis added). The code section is written in the disjunctive, and thus requires that only one prong is satisfied in order to find liability. *Cel-Tech Comm., Inc. v. Los Angeles Cellular Tel. Co.* (1999) 20 Cal.4th 163, 180.

96.   **Unlawful:** "The 'unlawful' practices prohibited by section 17200 are any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Saunders v. Superior Court* (1994) 27 Cal.App.4th 832, 838–39 (emphasis added). These predicate unlawful business acts and practices include, but are not limited to, *Civil Code* section 1710 (negligent misrepresentation) and 15 U. S. *Code* section 1962d (unlawful debt collection practices). A violation of any of these underlying laws is a *per se* violation of section 17200.

97.   Plaintiffs are informed, believe, and thereon allege that Defendants, and each of them, made a misleading and false representation to Plaintiff Tito Aguirre associated with the reinstatement of the Loan Agreement.

98.   Plaintiffs are further informed, believe, and thereon allege that Defendants, and each of them, failed to accept Plaintiff Tito Aguirre's reinstatement payment timely and ultimately resulted in Plaintiffs' predicament of losing their home.

/ / /

18

**VERIFIED FIRST AMENDED COMPLAINT**

CONSUMER LITIGATION LAW CENTER, APC

99.    Plaintiffs are further informed, believe, and thereon allege that Defendants, and each of them, repeatedly and continuously made harassing phone calls to Plaintiffs to collect the debt after Defendants failed to honor to reinstate the loan.

100.    Plaintiffs are further informed, believe, and thereon allege that Defendants, and each of them, improperly applied late fees onto Plaintiff Tito Aguirre's loan during loan modification review(s) as prohibited by *Civil Code* section 2924.11(f).

101.    Plaintiffs are further informed, believe, and thereon allege that Defendants, and each of them, violated their duty of care to Plaintiff Tito Aguirre as they did not act in good faith in relation to Plaintiff Tito Aguirre's loan servicing.

102.    Finally, because Defendants wrongfully and unlawfully deceived Plaintiff Tito Aguirre into changing position to his financial detriment, Plaintiffs are now in the process of a foreclosure sale.

103.    **Unfair:** "[A]n unfair business practice occurs when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to the consumer." *People v. Casa Blanca Convalescent Homes Inc.* (1984) 159 Cal.App.3d 509, 530.   Furthermore, the "unfair" standard is intentionally broad and allows courts maximum discretion to prohibit new schemes to defraud.  *Motors, Inc. v. Times Mirror Co.* (1980) 102 Cal.App.3d 735, 740.  Finally, because section 17200 is disjunctive, practices that may be lawful may nevertheless be unfair.  *Id*.

104.    Defendants, and each of them, engaged in unfair business practices by refusing to accept Plaintiff Tito Aguirre's reinstatement payment in a timely manner and thus resulted in the eventual foreclosure of the Subject Property.

/ / /

/ / /

**VERIFIED FIRST AMENDED COMPLAINT**

CONSUMER LITIGATION LAW CENTER, APC

105.   As alleged hereinabove, when Plaintiff Tito Aguirre had an opportunity to correct his default, Defendants did nothing to relieve Plaintiff, refused to take the full back payments, and now refuse to indefinitely postpone or cancel a pending trustee's sale even though Plaintiff Tito Aguirre was able, ready and willing to bring the loan current in 2012.   Therefore, a trustee's sale cannot take place at this time.

106.   Instead of engaging in good faith loss mitigation assistance as required by law, Defendants have still maintained foreclosure proceedings on the Subject Property and wrongfully refused to postpone the trustee's sale. Defendants' unfair practices further include:

   a.   charging excessive or improper fees for default-related services;

   b.   unreasonably making incessant phone calls to Plaintiffs' residence to collect a debt with intent to harass the Plaintiffs;

   c.   failing to bring the Loan Agreement current when Plaintiff Tito Aguirre offered the full reinstatement payment amount;

   d.   failing to work with Plaintiff Tito Aguirre in good faith so that Defendants could bring the loan current and ultimately avoid the foreclosure of the Subject Property.

107.   Defendants' unfair practices in servicing Plaintiff Tito Aguirre's loan violate public policy favoring home preservation of the borrowers.

108.   **Fraudulent**:   A business practice is fraudulent under *Business and Professions Code* section 17200 if "members of the public are likely to be deceived." *Committee on Children's Television v. General Foods Corp.* (2002) 35 Cal.3d 197, 211.   Furthermore, even lawful contract terms presented in a deceptive manner are fraudulent under section 17200.   *Boschma v. Home Loan Ctr., Inc.* (2011) 198 Cal.App.4th 230, 253.   Such fraudulent practices do not require the plaintiff show actual deception, reliance, or damages.   *Committee on*

CONSUMER LITIGATION LAW CENTER, APC

**VERIFIED FIRST AMENDED COMPLAINT**

*Children's Television v. General Foods Corp.*, *supra*, 35 Cal.3d at 211. Defendants' acts and omissions, as alleged herein, were likely to deceive members of the public and, in fact, did deceive Plaintiff.

109.    Defendants' fraudulent business practices included, but were not limited to:

a.    providing false or misleading information in response to inquiries;

b.    providing false or misleading information to Plaintiff Tito Aguirre;

c.    refusing to accept the reinstatement payment from Plaintiff Tito Aguirre when the amount was full and accurate;

d.    continuing with foreclosure proceedings while Plaintiffs were in good faith actively pursuing a loss mitigation alternative offered by Defendants.

110.    Defendants' unlawful, unfair, and fraudulent business practices present a continuing threat of deception to both Plaintiffs and members of the public at large as alleged herein.  Plaintiffs and other members of the general public have no other adequate remedy at law that will prevent Defendants' misconduct as alleged herein from occurring, and reoccurring, in the future to both Plaintiffs and members of the general public.

111.    As a direct and proximate result of Defendants' unlawful, unfair, and fraudulent business practices alleged herein, Plaintiffs have suffered extensive pecuniary damages as alleged herein as well as threatened loss of the Subject Property.  These damages, which are a direct and proximate result of Defendants' unlawful, unfair and fraudulent business practices are sufficient to confer standing on Plaintiffs to bring a claim for relief under California's Unfair Competition Law.

/ / /

**VERIFIED FIRST AMENDED COMPLAINT**

112.    As a result of Plaintiff Tito Aguirre's reliance on Defendants' misrepresentations, Plaintiffs have suffered and continue to suffer pecuniary damages due to excessively high mortgage payments, fees, and costs, and loss of all value and equity in the Subject Property, in an amount to be proven at time of trial but no less than the jurisdictional minimum of this Court.

113.    Plaintiffs are therefore entitled to restitution of sums paid into the Loan Agreement.

114.    Plaintiffs are further entitled to enjoin any trustee's sale scheduled on the Subject Property and such further relief as is set forth in this Cause of Action and to such further relief set forth below in the section captioned Prayer for Relief which is by this reference incorporated herein.

## NINTH CAUSE OF ACTION

## VIOLATION OF TRUTH IN LENDING ACT

## (12 C.F.R. § 1026.36(c))

## (Against Wells Fargo, NDEX West, and Does 1–25)

115.    Plaintiffs hereby reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

116.    Under the Truth in Lending Act ("TILA") as codified at 12 C.F.R. 1026.36(c), a loan servicer must not fail to credit a payment to a consumer's loan account as of the date of receipt and must not impose a late fee on a consumer in connection with a payment with the payment is a fully payment for the applicable period and is paid on its due date or within any applicable grace period.

117.    Defendants failed to timely apply the reinstatement amount that Plaintiff Tito Aguirre attempted to pay to Defendants so that Plaintiff was unable to reinstate the Loan Agreement and bring his loan account out of default.

118.    Plaintiffs are informed, believe, and thereon allege that Defendants imposed improper late fees during the period when Plaintiff Tito Aguirre was under review for one or more loan modifications.

CONSUMER LITIGATION LAW CENTER, APC

**VERIFIED FIRST AMENDED COMPLAINT**

119.   Plaintiffs are therefore informed, believe, and thereon allege that Defendants' imposition of late fees during the period when a loan modification review was undertaken is a direct violation of 12 C.F.R. 1026.36(c).

120.   Defendants are liable to Plaintiffs under Truth in Lending Act, 15 U. S. C. § 1640 for actual damages.

121.   Defendants are liable to Plaintiffs under Truth in Lending Act, 15 U. S. C. § 1640 for statutory damages, not less than $200 or greater than $2000.

122.   Defendants are liable to Plaintiffs under Truth in Lending Act, 15 U. S. C. § 1640 for court costs and attorney's fees.

## TENTH CAUSE OF ACTION

### VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT

### (15 U. S. *Code* § 1692d)

### (Against Wells Fargo, NDEX West, and Does 1–25)

123.   Plaintiffs hereby reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

124.   Plaintiffs are "consumers" within the meaning of 15 U. S. *Code* section 1962a(3) and bring this cause of action pursuant to 15 U. S. *Code* section 1962d.

125.   Defendants are "debt collectors" within the meaning of 15 U. S. *Code* section 1692a(6)(A).

126.   Pursuant to 15 U. S. *Code* section 1692d (5), a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

127.   Plaintiffs are informed, believe, and thereon allege that Defendants' repeated and continuous calls to the Plaintiffs to collect the debt with intent to annoy, abuse, or harass Plaintiffs subsequent to Defendants' unreasonable refusal to allow Plaintiff Tito Aguirre to correct his default is a direct violation of 15 U. S. *Code* section 1692d(5).

128.   Defendants are liable to Plaintiffs under Fair Debt Collection Practices Act, 15 U. S. C. § 1692k for actual damages.

129.   Defendants are liable to Plaintiffs under Fair Debt Collection Practices Act, 15 U. S. C. § 1692k for statutory damages up to $1,000.00 per violation of FDCPA.

130.   Defendants are liable to Plaintiffs under Fair Debt Collection Practices Act, 15 U. S. C. § 1692k for reasonable costs and attorney's fees.

## ELEVENTH CAUSE OF ACTION

### QUIET TITLE

### (Cal. *Code Civ. Proc.* § 760.020)

### (Against Wells Fargo, NDEX West, and All Persons Unknown, Claiming Any Legal Or Equitable Right, Title, Estate, Lien, Or Interest In The Property Described In The Complaint Adverse To Plaintiff's Title Or Any Cloud On Plaintiff's Title Thereto, and Does 1–25)

131.   Plaintiffs hereby reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

132.   Plaintiffs are the legal owners of the Subject Property that is commonly known as 638 Molinar Avenue, La Puente, California 91744[2] ("Subject Property").

133.   Plaintiffs seek to quiet title as of March 13, 2013, the date the NOD was recorded on the Subject Property.

134.   Plaintiffs seek to quiet title against the claims of all Defendants named in this Complaint and anyone else claiming interest in the Subject Property.   Defendants and any successors or assignees have no right to title or

---

[2] Legal Description: Lot 34 of Tract No. 19348, in the City of La Puente, County of Los Angeles, State of California, as per map recorded in Book 538, page(s) 32 to 35 inclusive of Maps, in the office of the County recorder of said County.

APN: 8251-021-020

**VERIFIED FIRST AMENDED COMPLAINT**

CONSUMER LITIGATION LAW CENTER, APC

interest in the Subject Property and no right to entertain any such rights of ownership including the right of possession.

135.   Plaintiffs seek a judicial declaration that the title to the Subject Property is vested in Plaintiffs alone as the title owners of the Subject Property, and that Defendants and each of them be declared to have no estate, right, title, or interest in the Subject Property, and that Defendants, their agents, and assigns, be forever enjoined from asserting any estate, right, title or interest in the Subject Property.

136.   As Defendants do not have any legal ownership or interest in the Subject Property to conduct any sale through foreclosure on the Subject Property. Therefore, Plaintiffs still have title to the Subject Property and title should be vested in Plaintiffs' name alone.

137.   Tender of the full outstanding debt is not required.   There is no bright-line rule requiring tender of the unpaid debt to set aside a sale.   *Storm* v. *America's Servicing Company* (S.D.Cal. Nov. 6, 2009, No. 09CV1206-IEG (JMA)) 2009 WL 3756629 at *6 fn. 9.   ". . . [T]ender is a "matter of discretion left up to the Court."   *Id.* at *6.   Even if tender were expressly required anywhere, there is no requirement that tender be pled because "at the procedural stage the Court only decides whether the plaintiff has pleaded "enough facts to state a claim to relief that is plausible on its face."   *Id.*; (quoting *Bell Atl. Corp.* v. *Twombly* (2007) 550 U.S. 544, 547).   Further, requiring Plaintiff to allege tender would affirm the underlying debt and invalidate Plaintiff's claims.   *See Onofrio v. Rice* (1997) 55 Cal. App. 4th 413, 424.   Plaintiff's claims for fraud and unfair and deceptive acts challenge the underlying debt.   In addition, the general equitable exception to the tender rule should be applied as such a requirement would evidence injustice and a hardship.   *Humboldt Sav. Bank v. McCleverty* (1911) 161 Cal. 285, 291.

/ / /

**VERIFIED FIRST AMENDED COMPLAINT**

CONSUMER LITIGATION LAW CENTER, APC

138.    A borrower is also not required to allege tender because it would be a financial bar to most borrower's claims.  *Multani v. Witkin & Neal*, 215 Cal.App.4th 1428, 1454–1455 (2013).  Tender is also not required where, as here, the borrower is attacking the validity of the foreclosure sale as void.  *Pfeifer v. Countrywide Home Loans* (2012) 211 Cal.App.4th 1250, 1280.  Finally, tender is also not required where a borrower is attacking the validity of a foreclosure sale **before** it has occurred.  *Barrionuevo v. Chase Bank* (N.D. Cal. 2012) 885 F.Supp.2d 964, 969 (applying California law).

139.    Accordingly, the Court should rule that title to the Subject Property be vested in Plaintiffs' name alone and award consequential damages in an amount to be proven at trial.

## TWELFTH CAUSE OF ACTION

### DECLARATORY RELIEF

### (Cal. *Code Civ. Proc.* § 1060)

### ((Against Wells Fargo, NDEX West, and Does 1–25)

140.    Plaintiffs hereby reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

141.    An actual controversy has arisen and now exists between Plaintiffs and Defendants concerning their respective rights and duties regarding Defendants' authority to foreclosure on the Subject Property.

142.    These disputes concern, but are not limited to, the ownership rights to the Subject Property, the validity of the foreclosure process, and the validity of any trustee's sale.

143.    Plaintiffs are informed, believe, and thereon allege that Defendants dispute Plaintiffs' position as alleged herein and take the contrary position that they do in fact have the legal right and authority to foreclose on the Subject Property at this time.

/ / /

**VERIFIED FIRST AMENDED COMPLAINT**

CONSUMER LITIGATION LAW CENTER, APC

144.    As a result of said dispute, Plaintiffs request a judicial determination of the rights, obligations, and interest of the parties as to the Subject Property, the foreclosure process, and the trustee's sale, and such determination is necessary and appropriate at this time, and under these circumstances, so that all parties may ascertain and know their rights, obligations, and interest in the Subject Property.

145.    As a result of Defendants' wrongful foreclosure proceedings and refusal to postpone the trustee's sale now set on the Subject Property, Plaintiffs have sustained great and irreparable injury through threatened loss of the Subject Property.  Plaintiffs cannot obtain adequate relief from money damages because real property is unique; thus, Plaintiffs lack an adequate remedy at law.

# VI.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays for judgment against the Defendants, and each of them, as follows:

1.    To enjoin any trustee's sale of the Subject Property scheduled while the instant litigation is pending;

2.    For injunctive reflief;

3.    For compensatory damages awarded according to proof;

4.    For special damages according to proof;

5.    For punitive damages sufficient to punish the Defendants and act as a deterrent to others;

6.    For all applicable statutory damages;

7.    For attorney's fees and costs of suit incurred herein;

/ / /

/ / /

/ / /

/ / /

/ / /

**VERIFIED FIRST AMENDED COMPLAINT**

8.      For pre- and post-judgment interest thereon; and

9.      For such other and further relief as the court deems just and proper.

Dated: April 23, 2015                CONSUMER LITIGATION LAW CENTER, APC


By:   _/s/ Fernando C. Saldivar_____
          September J. Katje, Esq.
          Fernando C. Saldivar, Esq.
          Attorneys for Plaintiffs,
          TITO AGUIRRE and
          YOLANDA  AGUIRRE

**VERIFIED FIRST AMENDED COMPLAINT**

## **VERIFICATION**

I, Tito Aguirre, am a Plaintiff in this action. I have read the Verified First Amended Complaint and the facts and allegations contained therein are true to the best of my knowledge, except as to those matters stated on information and belief, and, as to those matters, I believe them also to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at La Puente, California on April 22, 2015.

_____
Tito Aguirre

## **VERIFICATION**

I, Yolanda Aguirre, am a Plaintiff in this action. I have read the Verified First Amended Complaint and the facts and allegations contained therein are true to the best of my knowledge, except as to those matters stated on information and belief, and, as to those matters, I believe them also to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at La Puente, California on April 22, 2015.

_____
Yolanda Aguirre

CONSUMER LITIGATION LAW CENTER, APC

# EXHIBIT A

**WELLS FARGO** | **HOME MORTGAGE**

Your loan has been referred to foreclosure. The amounts available currently may vary daily; prior to sending funds, call us for a reinstatement or payoff quote. This does not change a sale date that may be scheduled.

**Customer Service**

| | |
|---|---|
| **Telephone:** | 1-800-282-3458 |
| **Hours of operation:** | Monday - Friday 7am - 8pm CST |
| | Saturday 8am - 5pm CST |
| **Online:** | wellsfargo.com |

| | |
|---|---|
| **Property address:** | **638 MOLINAR AVE** |
| | **LA PUENTE    CA 91744-4028** |
| **Loan number:** | 0042956367 |
| **Payment due date:** | 12/01/14 |
| **Statement date:** | 11/17/14 |

M9DLLSDTYV  012427



#CONSUMER LITIGATION LAW GROUP
100 N CITRUS ST STE 400
WEST COVINA      CA 91791

## 1. Payment options

Select your option on the payment coupon below. Please see *choosing your payment options* on reverse side for explanation.

**PAYMENT OPTIONS DO NOT APPLY**

## 2. Current payment explanation

**Payment options**

| | |
|---|---|
| Interest due | 1,220.31 |
| Deferred interest+ | 0.00 |
| Principal paid | 182.96 |
| Escrow | 225.76 |
| Optional product(s) | 0.00 |
| Current payment | 1,629.03 |
| Total past due | 41,482.19 |
| **Total payment** | **43,111.22** |

| Past due amount | Late charges/ fees due | Total past due | Total outstanding deferred interest+ | Current interest rate |
|---|---|---|---|---|
| 40,725.75 | 756.44 | 41,482.19 | | 5.900 |

+See explanation of deferred interest on reverse side under *choosing your payment options*.

## 3. Year-to-date

| Total received* | | Escrow disbursements | |
|---|---|---|---|
| | 274.62 | | |
| Principal | | Taxes | |
| | 0.00 | | 1,082.50 |
| Interest | | Additional assessments | |
| | 0.00 | | 0.00 |
| Late charges/ fees | | Homeowners insurance | |
| | 0.00 | | 379.00 |
| Escrow | | | |
| | 274.62 | | |
| Optional products | | | |
| | 0.00 | | |
| Advance | | | |
| | 0.00 | | |

*This total may include the Unapplied funds balance from the balance summary displayed below.

## 4. Transaction activity

| Date | Description | Total | Principal | Interest paid | Escrow | Optional insurance | Late charges/ other fees | Unapplied funds |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

## 5. Important messages

| | | |
|---|---|---|
| Unpaid principal bal  252,493.40 | Unpaid second principal bal  5,266.66 | |
| Escrow bal  -3,883.52 | Unapplied funds bal  0.00 | Unpaid adv bal  3,304.75 |

**wellsfargo.com**

Maturity date 08/2049

Your loan is 025 payment(s) past due.  Your oldest payment was due  11/01/12.
********If you are having difficulties making your mortgage payments, we encourage you to contact Wells Fargo at 1-888-345-1354.  Some of our payment plans may pleasantly surprise you.  If your payment has already been made, please disregard this message.

*Please detach and return with your payment.*

0000042956367000162903004311122004318138000000000000000000000000124277

| | | | |
|---|---|---|---|
| **Loan number:**  0042956367 | | **Payment due date:** | **12/01/14** |
| **Name:** TITO AGUIRRE | - Minimum payment    $43,111.22 | **Payment amount:** | |
| | | **Additional amount to go to principal/deferred interest:** | |
| | | **Total amount enclosed:** | |

**WELLS FARGO HOME MORTGAGE**
**PO Box 60505**
**City of Industry CA 91716-0505**

For change of address or phone number, check the box and enter new information on reverse side. ☐

**Make Wells Fargo your first choice**

### Thinking of buying a new home or refinancing your mortgage?

Stop by the Wells Fargo Home Mortgage
Store in your area or call      1-888-261-5490

### Wells Fargo also offers

| | |
|---|---|
| Checking, savings, CDs | 1-800-932-6736 |
| Home Rebate Credit Card | 1-800-932-6736 |
| Home equity loans and lines of credit | 1-888-237-0186 |
| Homeowners insurance | 1-866-444-0479 |
| Disaster recovery plan insurance | 1-800-234-7354 |
| Home warranty | 1-888-247-4777 |
| Student loans | 1-888-511-7304 |
| Past-due payment arrangements | 1-800-282-3451 |
| Identity theft protection | 1-877-247-9912 |

### Correspondence address

P.O. Box 10335
Des Moines, IA 50306
Fax: 1-855-519-3481

### Important information

If you send your payment to any other location, it may cause a processing delay. When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day we receive your payment, and you will not receive your check back from your financial institution. If your mortgage check does not clear upon initial presentment, your bank may charge a fee and we may attempt to withdraw funds from your account electronically up to a maximum of three times. If we are not able to successfully collect these funds, the check amount will be reversed from your loan.

### Choosing your payment options

This section explains the payment options listed on your billing statement.* These options provide you with flexibility in managing your monthly expenses.
1) **Minimum payment:** Covers the minimum amount due monthly[1].
2) **Interest only:** Pays your interest but does not reduce your loan balance. Covers only the minimum payment plus all regular monthly interest due.
3) **Scheduled principal and interest:** Reduces your loan balance and saves you money on taxes, because the interest you pay can be tax deductible (Consult your tax advisor). Includes interest and principal to pay off your loan within its scheduled term.
4) **15-year payment plan:** Includes all interest due and enough principal to pay off your loan within a 15-year term.

[1]**Deferred interest:** with many of our loans, when you choose to pay the minimum amount, your payment may not cover the total interest due. The unpaid portion -- called deferred interest -- is added to your loan balance and incurs interest at the same rate as your loan. You can avoid deferred interest by choosing payment option 2, 3, or 4 above. You can pay any portion of your outstanding deferred interest (shown in section 2 on the reverse side) at any time.

*****Please note:** Certain options may not appear on your statement if:
- Your minimum payment is larger than the interest only option or equal to the scheduled principal and interest option.
- You have past-due payments.

### Fee schedule

Fees for assumptions, partial releases, and other services will be quoted upon request. Allowable fees for checks and drafts that are not honored by your bank vary by state and will be assessed automatically. States with fixed fees are as follows: ME, NM, RI, VT-$0; FL, LA, MI, OK-$25; AR, GA, HI, KS, MN, MT, WY-$30; PA-$50. Fees are subject to change without notice.

### Disputing account information reported to credit bureaus

Wells Fargo Bank, N.A. may furnish information about your account to consumer reporting agencies. You have the right to dispute the accuracy of information that we have reported by writing to us at the correspondence address and describing the specific information that is inaccurate or in dispute and the basis for any dispute with supporting documentation. In the case of information that you believe relates to an identity theft, you will need to provide us with an identity theft report.

For those customers who reside in the state of New York, the debtor may file complaints about the servicer and obtain further information from the New York Banking Department by calling the department's Consumer Help Unit at 1-800-342-3736 or by visiting the department's website at **www.banking.state.ny.us**.

For those customers who reside in the state of Texas, Wells Fargo Home Mortgage will not recognize **3rd party property tax lien transfers or property tax deferrals.** These programs create a lien on your property which takes priority over your mortgage. A change in lien position violates your mortgage agreement and Wells Fargo will take the necessary steps needed to ensure the mortgage lien is not at risk.

### Servicemembers Civil Relief Act

**Servicemembers Civil Relief Act** -- The Servicemembers Civil Relief Act (SCRA) may offer protection or relief to members of the military who have been called to active duty. If either you have been called to active duty, or you are the spouse, registered domestic partner, partner in a civil union, or financial dependent of a person who has been called to active duty, and you have not yet made us aware of your status, please contact our Military Customer Service Center at 1-800-642-0257 or fax your Active Duty Orders to 1-877-658-4585, attention Special Loans/SCRA.

### Important bankruptcy notice

If you are presently seeking relief (or have previously been granted relief) under the United States Bankruptcy Code, this statement is being sent to you for informational purposes only. It is provided to you as a courtesy should you voluntarily decide to make payments on your account. Notwithstanding any language contained in this statement, we want to assure you that we:
- Are not providing this information to you in an attempt to collect a debt from you in any way violate any provision of the United States Bankruptcy Code
- Will not seek collection of any amount owing on your account that will be (or has been) discharged in connection with your bankruptcy case, except any amount that may be payable to us as a result of filing a proof of claim in your bankruptcy case; and
- Will only file a proof of claim for any amount owing on your account in your bankruptcy case if and when it is appropriate to do so.

In addition, if you filed a Chapter 7 bankruptcy case and received a discharge, but you did not reaffirm this debt, then please be advised that we are not sending this statement to you in an attempt to collect this debt from you personally and we can only exercise our rights against the property securing this debt.

### Contact us

If you'd like to request information, notify us of an error, or share any concerns you may have about the servicing of your loan, please contact us at P.O. Box 10335, Des Moines, IA 50306.

### Housing counselor information

If you would like counseling or assistance, for a list of homeownership counselors or counseling organizations in your area, you can contact the following:
- U.S. Department of Housing and Urban Development (HUD),
go to **http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm**
or call 1-800-569-4287.

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A.

© 2014 Wells Fargo Bank, N.A. Member FDIC. All rights reserved. NMLSR ID 399801

032684




0000 001203 (Rev 00 - 9/13)

---

### Change of information

Print your information in the spaces provided. Please check the box on the front side of this coupon. Your signature is required for all changes.

| | |
|---|---|
| New mailing address | |
| City | State    Zip |
| Home phone number | Work phone number |
| Email address | |



| Borrower signature | Date | Co-borrower signature | Date |
|---|---|---|---|

0000 001203 (Rev 00 - 9/13)



## Past Due Account Status

**As of the date of this statement, you are 746 days delinquent on your account.** Failure to bring your loan current may result in fees, the acceleration of your repayment terms (or request for repayment of your balance in full), or the possibility of loss of your home through foreclosure.

The delinquent amount due on your account is $43,111.22.

### Recent Account History

| Statement Payment Date | Statement Payment Amount | Payment Amount Outstanding * |
|---|---|---|
| 11/01/14 | $1,629.03 | $1,629.03 |
| 10/01/14 | $1,629.03 | $1,629.03 |
| 09/01/14 | $1,629.03 | $1,629.03 |
| 08/01/14 | $1,629.03 | $1,629.03 |
| 07/01/14 | $1,629.03 | $1,629.03 |
| 06/01/14 | $1,629.03 | $1,629.03 |

*This amount does not include unapplied funds.

**As of the date of this statement, Wells Fargo HAS filed an acceleration notice in connection with a foreclosure proceeding as required by applicable state law.**

M9DLLSDTYV 01242T 1NNNNNNNNN NNN NN 002 002    032685    11035410.1

**This page is intentionally left blank.**

032686



# EXHIBIT B



**This page is part of your document - DO NOT DISCARD**



## 20130284073





**Pages:**
**0002**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**02/25/13 AT 08:00AM**

| | |
|---|---|
| FEES: | 18.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 18.00 |



**L E A D S H E E T**



201302250160018

**00007292384**



004671823

**SEQ:**
**05**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**



t35

LOS ANGELES,CA                      Page 1 of 2            Printed on 9/15/2014 12:19:54 PM
Document: TD 2013.284073

Recording requested by:
**LSI Title Company**

When Recorded Mail To:
**NDEx West, L.L.C.**
**15000 Surveyor Boulevard, Suite 500**
**Addison, Texas   75001-9013**

APN #: **8251-021-020**
Property Address:
**638 MOLINAR AVE**
**LA PUENTE, CALIFORNIA   91744**



2 1


SUB20130015000535

| | Space above this line for Recorder's use only |

Trustee Sale No. :  **20130015000535** Title Order No.:  **130036458**

# SUBSTITUTION OF TRUSTEE

WHEREAS, **TITO AGUIRRE** was the original Trustor, **GOLDEN WEST SAVINGS ASSOCIATION SERVICE CO.** was the original Trustee, and **WORLD SAVINGS BANK, FSB** was the original Beneficiary **Recorded on 05/23/2006 as Instrument No. 06 1129992** of official records in the Office of the Recorder of **Los Angeles** County, **California**, as more fully described on said Deed of Trust.; and WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said prior Trustee.

NOW, THEREFORE, the undersigned hereby substitutes, **NDEx West, L.L.C.**, WHOSE ADDRESS IS:  **15000 Surveyor Boulevard, Suite 500, Addison, Texas   75001-9013**, as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

DATED:

**FEB 1 9 2013**
_____

State of    TEXAS }
County of   DALLAS }

WELLS FARGO BANK, N.A. SUCCESSOR BY MERGER TO WELLS
FARGO BANK SOUTHWEST, N.A. F/K/A WACHOVIA MORTGAGE
FSB F/K/A WORLD SAVINGS BANK, FSB By NDeX West, LLC
It's Attorney in Fact

_____

Ric Juarez – Assistant Vice President/Foreclosure Operations Manager

On     **FEB 1 9 2013**        before me, _____ , Notary Public, personally appeared Ric Juarez who is known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that  he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature: _____ (Seal)

My commission expires: _____

F. ALVA
Notary Public, State of Texas
My Commission Expires
**11/14/2015**

# EXHIBIT C

**This page is part of your document - DO NOT DISCARD**

**06 1129992**

**RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA**
**05/23/06 AT 08:00am**

**TITLE(S) :**



**L E A D     S H E E T**

**FEE**                                                         **D.T.T.**

FEE $ 68  M
DAF $ 4
C-20

**CODE**
**20**

**CODE**
**19**

**CODE**
**9____**

NOTIFICATION SENT-$4

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**          **Number of AIN's Shown**

**THIS FORM IS NOT TO BE DUPLICATED**

COMMONWEALTH LAND TITLE CO.

506 1618

RECORDING REQUESTED BY:
WORLD SAVINGS BANK

06 1129992

WHEN RECORDED MAIL TO:
WORLD SAVINGS BANK
FINAL DOCUMENTATION
CLOSING DEPARTMENT
P.O. BOX 659548
SAN ANTONIO, TX 78265-9548

LOAN NUMBER. 0042956367

NOTE AMOUNT: $301,000.00

ASSESSOR'S IDENTIFICATION #·

FOR RECORDER'S USE ONLY

## DEED OF TRUST

**THIS IS A FIRST DEED OF TRUST WHICH SECURES A NOTE WHICH CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, FREQUENCY AND AMOUNT OF PAYMENTS AND PRINCIPAL BALANCE (INCLUDING FUTURE ADVANCES AND DEFERRED INTEREST). AT LENDER'S OPTION THE SECURED NOTE MAY BE RENEWED OR RENEGOTIATED. THE SECURED NOTE PROVIDES FOR MONTHLY PAYMENTS OF PRINCIPAL AND INTEREST.**

**THE MAXIMUM AGGREGATE PRINCIPAL BALANCE SECURED BY THIS DEED OF TRUST IS $376,250 00 WHICH IS 125% OF THE ORIGINAL PRINCIPAL NOTE AMOUNT.**

I.    **DEFINITIONS OF WORDS USED IN THIS DEED OF TRUST**
    **(A)  Security Instrument.** This Deed of Trust, which is dated **May 12, 2006,** will be called the "Security Instrument "

    **(B)  Borrower.  TITO AGUIRRE, A MARRIED MAN**  sometimes will be called "Borrower" and sometimes simply "I" or "me "

    **(C)  Lender. WORLD SAVINGS BANK, FSB,  ITS SUCCESSORS AND/OR ASSIGNEES,** will be called "Lender " Lender is a **FEDERAL SAVINGS BANK,** which is organized and exists under the laws of the United States  Lender's address is **1901 Harrison Street, Oakland, CA 94612**

05/23/06

SD001A (2004-03-2)         DEED OF TRUST-ADJUSTABLE      CA
DEFERRED INTEREST              Page 1

0 0 3
LENDER'S USE ONLY

0042956367

**(D) Note.** The note signed by Borrower and having the same date as this Security Instrument, including all extensions, renewals, substitutions and modifications thereof, will be called the "Note " The Note shows that I owe Lender the original principal amount of U S  **$301,000.00**, plus accrued and deferred interest and such other amounts as stated in the Note  I have promised to pay this debt in regularly scheduled periodic payments as provided in the Note and to pay the debt in full by **June 15, 2036** ("Maturity Date")

**(E)  Property.** The property that is described below in Section III entitled "Description of the Property" will be called the "Property "

**(F)  Sums Secured.** The amounts described below in Section II entitled "Borrower's Transfer of Rights in the Property" sometimes will be called the "Sums Secured "

**(G)  Person.** Any person, organization, governmental authority or other party will be called "Person "

**(H)  Trustor, Beneficiary, Trustee.** Borrower is the "Trustor," Lender is the "Beneficiary" and **Golden West Savings Association Service Co., A California Corporation** is the "Trustee "

## II.      BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY

I irrevocably grant and convey the Property to the Trustee, in trust for Lender, with a power of sale subject to the terms of this Security Instrument  This means that, by signing this Security Instrument, I am giving Lender and Trustee those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who are beneficiaries of a deed of trust and to trustees of a deed of trust  I am giving Lender and Trustee these rights to protect Lender from possible losses that might result if I fail to

(i)    pay all amounts owed to Lender under the Note and all other notes secured by this Security Instrument, called the "Secured Notes," including future advances made by Lender and any changes to the Secured Notes made with the written consent of Lender,

(ii)    pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 below to protect the value of the Property and Lender's rights in the Property, and

(iii)    keep all of my other promises and agreements under this Security Instrument, the Secured Notes and any changes to the Secured Notes made with the written consent of Lender

## III.      DESCRIPTION OF THE PROPERTY

I give Trustee rights in the Property described below

(i)    The Property which is located at **638 MOLINAR AVE, LA PUENTE, CA  91744-4028**  The legal description of the Property is attached as Exhibit "A" which is made a part of this Security Instrument  This Property is called the "Described Property "

(ii)    All buildings and other improvements that are located on the Described Property,

SD001B (2004-03-2)                           DEED OF TRUST-ADJUSTABLE                                      CA
DEFERRED INTEREST                                       Page 2              06  1129992

0042956367

(iii)    All rights in other property that I have as owner of the Described Property  These rights are known as easements, rights and appurtenances attached to the Property,

(iv)    All rents or royalties and other income from the Described Property,

(v)    All mineral, oil and gas rights and profits, water rights and stock that are part of the Described Property,

(vi)    All rights that I have in the land which lies in the streets or roads in front of, behind or next to, the Described Property,

(vii)    All fixtures that are now or in the future will be on the Described Property or on the property described in subsection (ii) of this Section,

(viii)    All of the rights and property described in subsections (ii) through (vii) of this Section that I acquire in the future,

(ix)    All replacements of or additions to the property described in subsections (ii) through (viii) of this Section, and

(x)    All of the amounts that I pay to Lender under Paragraph 2 below

## IV.    BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that  (i) I lawfully own the Property, (ii) I have the right to grant and convey the Property to Trustee, and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, except for those which are of public record

I give a general warranty of title to Lender  This means that I will be fully responsible for any losses which Lender suffers because someone other than myself and the Trustee has some of the rights in the Property which I promise that I have  I promise that I will defend my ownership of the Property against any claims of such rights

## COVENANTS

I promise and I agree with Lender as follows

## 1.    BORROWER'S PROMISE TO PAY

I will pay to Lender, on time, all principal and interest due under the Secured Notes and any prepayment and late charges due under the Secured Notes

## 2.    PAYMENTS FOR TAXES AND INSURANCE

### (A)    Borrower's Obligations

I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any)

SD001C (2004-03-2)                  DEED OF TRUST-ADJUSTABLE                          CA
                                    Page 3

06 1129992

0042956367

**(B)**    **Escrow Accounts**

Subject to applicable law, no escrow shall be required except upon written demand by Lender, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ("Funds") for (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property, (b) yearly leasehold payments or ground rents on the Property, if any, (c) yearly hazard or property insurance premiums, (d) yearly flood insurance premiums, if any, and (e) yearly mortgage insurance premiums, if any  These items are called "Escrow Items " Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U S C  § 2601 et seq  ("RESPA"), unless another law that applies to the Funds sets a lesser amount  If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount  Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items in accordance with applicable law

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank  Lender shall apply the Funds to pay the Escrow Items  Lender may not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and/or applicable law permits Lender to make such a charge  However, Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise  Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay me any interest or earnings on the Funds  Lender shall give to me, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made  The Funds are pledged as additional security for all sums secured by this Security Instrument

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to me for the excess Funds in accordance with the requirements of applicable law  If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify me in writing, and, in such case I shall pay to Lender the amount necessary to make up the deficiency or shortage  I shall make up the deficiency or shortage in accordance with the requirements of the Lender, at its sole discretion, in the manner and times prescribed by RESPA

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to me any Funds held by Lender  If, under Paragraph 28, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument

SD001D (2004-03-2)                         DEED OF TRUST-ADJUSTABLE                                        **CA**
                                                    Page 4

06 1129992

0042956367

**3.    APPLICATION OF BORROWER'S PAYMENTS**
Unless applicable law requires otherwise, Lender will apply each of my payments under the Secured Notes and under Paragraphs 1 and 2 above in the following order and for the following purposes



First, to pay prepayment charges due under the Secured Notes,

Second, to pay any advances due to Lender under this Security Instrument,

Third, to pay the amounts due to Lender under Paragraph 2 above,

Fourth, to pay interest due under the Secured Notes,

Fifth, to pay deferred interest due under the Secured Notes,

Sixth, to pay principal due under the Secured Notes,

Last, to pay late charges due under the Secured Notes

**4.    BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS**
I will pay all taxes, assessments and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument

I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property  I will pay these amounts either by making the payments to Lender that are described in Paragraph 2 above or by making the payments on time to the Person owed them

Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a **lien.** I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument  However, this Security Instrument does not require me to satisfy a superior lien if (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves in writing the way in which I agree to pay that obligation, or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up, or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person  If Lender determines that any part of the Property is subject to a superior lien, Lender may give to me a notice identifying the superior lien  I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice

**5.    BORROWER'S OBLIGATION TO MAINTAIN INSURANCE**
At my sole cost and expense, I will obtain and maintain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property  The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage  The insurance must be in the amounts and for the periods of time required by Lender  I may choose the insurance company but my choice is subject to Lender's approval  Lender may not refuse to approve my choice unless the refusal is reasonable  All of these insurance policies and renewals of the policies must include what is known as a **Standard Mortgagee Clause** to protect Lender  The form of all policies and renewals must be acceptable to Lender  Lender will have the right to hold the policies and renewals  If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive

SD001E (2004-03-2)                         DEED OF TRUST-ADJUSTABLE                         CA
                                                    Page 5

                                            06 1129992

0042956367

If I obtain earthquake insurance, any other hazard insurance, credit life and/or disability insurance, or any other insurance on or relating to the Property or the Secured Notes and which are not specifically required by Lender, I will name Lender as loss payee of any proceeds

If there is a loss or damage to the Property, I will promptly notify the proper insurance company and Lender If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so

The amount paid by the insurance company is called "Proceeds" Any Proceeds received will be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the Proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion, regardless of any impairment or lack of impairment of security, as follows (A) to the extent allowed by applicable law, to the Sums Secured in a manner that Lender determines and/or (B) to the payment of costs and expenses of necessary repairs or to the restoration of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender or the insurance company stating that the insurance company has offered to settle a claim, Lender may collect the Proceeds I will notify Lender immediately of any offer to settle a claim I receive from the insurance company I will immediately deliver any Proceeds I receive from any insurer or other persons to Lender Lender may use the Proceeds to repair or restore the Property or to pay the Sums Secured The 30-day period will begin when the notice is given

If any Proceeds are used to reduce the amount of the outstanding balance of the Sums Secured, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above However, Lender and I may agree in writing to delays or changes

If Lender acquires the Property under Paragraph 28 below, all of my rights in the insurance policies will belong to Lender Also, all of my rights in any Proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender However, Lender's rights in those Proceeds will not be greater than the total amount of the Sums Secured immediately before the Property is acquired by Lender or sold

If I am required by Lender to pay premiums for mortgage insurance, I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law

6.    **BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE OBLIGATIONS**

I will keep the Property in good repair including, but not limited to, keeping the Property free from debris, mold, termites, dry rot and other damaging pests and infestations   I will not destroy or substantially change the Property and I will not allow the Property to deteriorate I will keep and maintain the Property in compliance with any state or federal health and safety laws, and hazardous materials and hazardous waste laws I will not use, generate, manufacture or store any hazardous materials or hazardous waste on, under or about the Property I will indemnify, defend and hold harmless Lender and its employees, officers and directors and their successors from any claims, damages or costs for required or necessary repair or the removal of mold, termites, dry rot, other damaging pests and infestations and hazardous waste or any other hazardous materials claim If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing

SD001F (2004-03-2)                     DEED OF TRUST-ADJUSTABLE                          **CA**
                                              Page 6

**06 1129992**

0042956367

### 7.    LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY

If  (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (including but not limited to any manner of legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever it deems reasonable or appropriate to protect the Lender's rights in the Property  Lender's actions may include, without limitation, appearing in court, paying reasonable attorneys' fees, purchasing insurance required under Paragraph 5, above (such insurance may cost more and provide less coverage than the insurance I might purchase), and entering on the Property to make repairs  Lender must give me notice before Lender may take any of these actions  Although Lender may take action under this Paragraph 7, Lender does not have to do so  Any action taken by Lender under this Paragraph 7, will not release me from my obligations under this Security Instrument

I will pay to Lender any amounts which Lender advances under this Paragraph 7 with interest, at the interest rate in effect under the Secured Notes  I will pay those amounts to Lender when Lender sends me a notice requesting that I do so  Interest on each amount will begin to accrue on the date that the amount is advanced by Lender  However, Lender and I may agree in writing to terms that are different from those in this Paragraph 7  This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest

### 8.    LENDER'S RIGHT TO INSPECT THE PROPERTY

Lender, and others authorized by Lender, may enter upon and inspect the Property  They must do so in a reasonable manner and at reasonable times  Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection

### 9.    AGREEMENTS ABOUT GOVERNMENTAL TAKING OF THE PROPERTY

I assign to Lender all my rights (A) to proceeds of all awards or claims for damages resulting from condemnation, eminent domain or other governmental taking of all or any part of the Property, and (B) to proceeds from a sale of all or any part of the Property that is made to avoid condemnation, eminent domain or other governmental taking of the Property  All of those proceeds will be paid to Lender  If I receive any such proceeds, I will immediately deliver them to Lender

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured  If any of the proceeds remain after the Sums Secured have been paid in full, the remaining proceeds will be paid to me  Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, Sums Secured will be reduced only by the amount of proceeds multiplied by the following fraction  (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking  The remainder of the proceeds will be paid to me

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds and settle the claim  Lender may then use the proceeds to reduce the Sums Secured  The 30-day period will begin when the notice is given

If any proceeds are used to reduce the amount of the outstanding principal of the Secured Notes, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above  However, Lender and I may agree in writing to delays or changes

SD001G (2004-03-2)                         DEED OF TRUST-ADJUSTABLE                         CA
                                                    Page 7

06  1129992

0042956367

### 10.    CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS

#### (A)    Borrower's Obligations

Lender may allow a Person who takes over my rights and obligations subject to this Security Instrument to delay or to change the amount of the payments of principal and interest due under the Secured Notes or under this Security Instrument  Even if Lender does this, however, that Person and I will both still be fully obligated under the Secured Notes and under this Security Instrument

Lender may allow those delays or changes for a Person who takes over my rights and obligations, even if Lender is requested not to do so  Lender will not be required to bring a lawsuit against such a Person for not fulfilling obligations under the Secured Notes or under this Security Instrument, even if Lender is requested to do so

#### (B)    Lender's Rights

Even if Lender does not exercise or enforce any of its rights under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 28 below to demand that I make immediate payment in full of the Sums Secured

### 11.    OBLIGATIONS OF BORROWER, CO-SIGNORS AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS

Except as provided below, if more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument  Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together  This means that any one of us may be required to pay all of the Sums Secured

Any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signor") (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signor's interest in the Property under the terms of this Security Instrument, (b) is not personally obligated to pay the sums secured by this Security Instrument, and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signor's consent

Any Person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument Similarly, any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument

### 12.    MAXIMUM LOAN CHARGES

If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then  (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower  Lender may choose to make this refund by reducing the outstanding principal balance of the Secured Notes or by making a direct payment to Borrower  If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Secured Notes

SD001H (2004-03-2)                    DEED OF TRUST-ADJUSTABLE                    CA
                                            Page 8

06 1129992

0042956367

**13.** **LEGISLATION AFFECTING LENDER'S RIGHTS**

If a change in applicable law would make any provision of the Secured Notes or this Security Instrument unenforceable, Lender may require that I make immediate payment in full of all Sums Secured by this Security Instrument



**14.** **NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT**

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method  The notice will be addressed to me at **638 MOLINAR AVE, LA PUENTE, CA  91744-4028**  A notice will be given to me at an alternative address if I give Lender notice of my alternative address  I may give notice to Lender of my alternative address in writing or by calling Lender's customer service telephone number provided on my billing statement  I may designate only one mailing address at a time for notification purposes  Except as permitted above for changes of address, any notice that must be given to Lender under this Security Instrument will be given by mailing it by first class mail to Lender's address stated in Section I (C) above entitled, "Definitions of Words Used In This Deed of Trust," unless Lender gives me notice of a different address  Any notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law

**15.** **GOVERNING LAW; SEVERABILITY**

**This Security Instrument and the Secured Notes shall be governed by and construed under federal law and federal rules and regulations, including those for federally chartered savings institutions ("Federal Law") and, to the extent Federal Law does not apply, by the law of the jurisdiction in which the Property is located.**  In the event that any of the terms or provisions of this Security Instrument or the Secured Notes are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Security Instrument or the Secured Notes

**16.** **BORROWER'S COPY**

I acknowledge the receipt of one conformed copy of the Secured Notes and of this Security Instrument

**17.** **LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE PROPERTY**

If Lender requires immediate payment in full or if I abandon the Property, then Lender, Persons authorized by Lender, or a receiver appointed by a court at Lender's request may  (A) collect the rental payments, including overdue rental payments, directly from the tenants, (B) enter upon and take possession of the Property, (C) manage the Property, and (D) sign, cancel and change rental agreements and leases  If Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 17, I agree that the tenants may make those rental payments to Lender without having to ask (i) Lender whether I have failed to keep my promises and agreements under this Security Instrument, or (ii) me for my permission to do so

If Lender acts to have the Property sold after a Breach of Duty as defined in Paragraph 28, I understand and agree that  (A) my right to occupy the Property ceases at the time the Property is sold, (B) I shall have no right to occupy the Property after such sale without the written consent of the new owner of the Property, and (C) my wrongful and unlawful possession of the Property may subject me to monetary damages, including the loss of reasonable rent and the cost of eviction  All rental payments collected by

05/23/06

06 1129992

0042956367

Lender or by a receiver, other than the rent paid by me under this Paragraph 17, will be used first to pay the costs of collecting rental payments and of managing the Property  If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the Sums Secured  The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees and the costs of any necessary bonds

### 18.    INJURY TO PROPERTY; ASSIGNMENT OF RIGHTS

An assignment is a transfer of rights to another  I may have rights to bring legal action against persons, other than Lender, for injury or damage to the Property or in connection with the loan made to me by Lender and which arose or will arise before or after the date of this Security Instrument  These rights to bring legal action may include but are not limited to an action for breach of contract, fraud, concealment of a material fact, or for intentional or negligent acts  I assign these rights, and any and all proceeds arising from these rights, as permitted by applicable law, to Lender  Lender may, at its option, enforce these rights in its own name and may apply any proceeds resulting from this assignment to the Sum Secured and this Security Instrument after deducting any expenses, including attorneys' fees, incurred in enforcing these rights  At the request of Lender, I will sign any further assignments or other documents that may be necessary to enforce this assignment  I will notify Lender immediately if I believe I have the right to bring any such legal action against any persons, and will notify Lender immediately if I assert any claim or demand against or commence any legal action against any such person  If I receive any proceeds from any persons besides Lender in connection with any such claim, demand or legal action, I will immediately deliver such proceeds to Lender

### 19.    CLERICAL ERRORS

In the event Lender at any time discovers that this Security Instrument, the Secured Notes or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from Lender, to execute such documentation as Lender deems necessary to correct any such error(s) and I also agree that I will not hold Lender responsible for any damage to me which may result from any such error

### 20.    LOST, STOLEN OR MUTILATED DOCUMENTS

If any of the Loan Documents are lost, stolen, mutilated or destroyed and Lender delivers to me an indemnification in my favor, signed by Lender, then I will sign and deliver to Lender a Loan Document identical in form and content which will have the effect of the original for all purposes

### 21.    WAIVER OF STATUTE OF LIMITATIONS

I will waive, within applicable law, the pleading of the statute of limitations as a defense to enforce this Security Instrument, including any obligations referred to in this Security Instrument or Secured Notes

### 22.    CAPTIONS

The captions and headings at the beginning of each paragraph of this Security Instrument are for reference only and will not be used in the interpretation of any provision of this Security Instrument

### 23.    MODIFICATION

This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender

### 24.    CONDOMINIUM, COOPERATIVE AND PLANNED UNIT DEVELOPMENT OBLIGATIONS

If the Property is a unit in a condominium, cooperative or planned unit development, each of which shall be called the "Project," and I have an interest in the common elements of the Project, then Lender and I agree that

(A)      If an owners association or other entity, called "Owners Association," holds title to Property for the benefit or use of the Project and its members or shareholders, the Property also includes my interest in the Owners Association and the uses, proceeds and benefits of my interest

SD001J (2004-03-2)                                DEED OF TRUST-ADJUSTABLE                        **CA**
                                                          Page 10

**06  1129992**

0042956367

**(B)**     The following are called the "Constituent Documents " (i) The declaration or any other document which created the Project, (ii) By-laws of the Owners Association, (iii) Code of regulations for the Project, (iv) Articles of incorporation, trust instrument or equivalent document which creates the Owners Association, (v) The Project's covenants, conditions and restrictions, (vi) Other equivalent documents 

I shall perform all of my obligations under the Constituent Documents, including my obligation to pay, when due, all dues and assessments  If I do not pay the dues and assessments when due, Lender may, at its option, pay them  I will pay to Lender any amounts which Lender advances under this Paragraph 24 according to the terms described in Paragraph 7 above

**(C)**     If the Owners Association maintains, with an insurance company reasonably acceptable to Lender, a **master** or **blanket** policy on the Project which is satisfactory to Lender and which provides insurance coverage on the terms, in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," and Lender is provided with evidence of such **master** or **blanket** policy, then  (i) Lender waives the provision in Paragraph 2(B) above for the payment to Lender of the estimated yearly premium installments for hazard insurance on the Property, and (ii) hazard insurance coverage on the Property as required by Paragraph 5 above is deemed to be satisfied to the extent that the required coverage is provided by the Owners Association policy  I shall give Lender prompt notice of any lapse in the required hazard insurance coverage  I shall provide a copy of such **master** or **blanket** policy to Lender annually

In the event of a distribution of any hazard insurance proceeds, including without limitation any earthquake or special hazards insurance whether or not such coverage was required by Lender, in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to me are hereby assigned and shall be paid to Lender for application to the Sums Secured by this Security Instrument, with any excess paid to me  If I receive any such proceeds, I will immediately deliver them to Lender or otherwise apply them as set forth above

I shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable to Lender in form, amount and extent of coverage

**(D)**     I shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to  (i) the abandonment or termination of the Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of condemnation, eminent domain or other governmental taking, (ii) any amendment to any provision of Constituent Documents unless the provision is for the express benefit of Lender or of lenders generally, (iii) termination of professional management and assumption of self-management of the Owners Association, or (iv) any action which would have the effect of rendering the **master** or **blanket** hazard insurance policy and/or the public liability insurance coverage maintained by the Owners Association unacceptable to Lender

## 25.     FUTURE ADVANCES

At Borrower's request, Lender, at its option (but before release of this Security Instrument or the full reconveyance of the Property described in the Security Instrument) may lend future advances, with interest, to Borrower  Such future advances, with interest, will then be additional Sums Secured under this Security Instrument

SD001K (2004-03-2)                          DEED OF TRUST-ADJUSTABLE                                    **CA**
                                                    Page 11

06  1129992

05/23/06

0042956367

**26.    AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**

13

**Acceleration of Payment of Sums Secured.** Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission  Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission  However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration  If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me

**Exception to Acceleration of Payment of Sums Secured.** If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if

(i)    Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender;

(ii)    Lender approves the creditworthiness of the transferee in writing,

(iii)    transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards,

(iv)    an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the then outstanding balance of Principal and interest under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender, and

(v)    the transferee executes an assumption agreement which is satisfactory to Lender  Such assumption agreement may provide, if required by Lender, that the transferee open a deposit account with Lender or with a bank or other depository institution approved by Lender, to facilitate direct payments if direct payments are required in the Note

The loan may be assumed under its then existing terms and conditions with one exception, the Lifetime Rate Cap may be changed  The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes

**27.    SUBSTITUTION OF TRUSTEE**

I agree that Lender may at any time appoint a successor trustee and that Person shall become the Trustee under this Security Instrument as if originally named as Trustee

SD001L (2 04-03-2)                    DEED OF TRUST-ADJUSTABLE                    CA
                                              Page 12

06 1129992

0042956367

### 28. RIGHTS OF THE LENDER IF THERE IS A BREACH OF DUTY

It will be called a "Breach of Duty" if (i) I do not pay the full amount of each regularly scheduled payment on the date it is due, or (ii) I fail to perform any of my promises or agreements under the Note or this Security Instrument, or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts, or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading  If there is a Breach of Duty by me, Lender may demand an immediate payment of all sums secured

If there is a Breach of Duty by me, Lender may exercise the power of sale, take action to have the Property sold under applicable law, and invoke such other remedies as may be permitted under any applicable law

Lender does not have to give me notice of a Breach of Duty  If Lender does not make a demand for full payment of the Sums Secured upon a Breach of Duty, Lender may make a demand for full payment of the Sums Secured upon any other Breach of Duty

If there is a Breach of Duty, Lender may also take action to have a receiver appointed to collect rents from any tenants on the Property and to manage the Property  The action to appoint a receiver may be taken without prior notice to me and regardless of the value of the Property

The sale of the Property may be postponed by or at the direction of Lender  If the Property is sold, I agree that it may be sold in one parcel  I also agree that Lender may add to the amount that I owe to Lender all legal fees, costs, allowances, and disbursements incurred as a result of the action to sell the Property

Lender will apply the proceeds from the sale of the Property in the following order  (A) to all fees, expenses and costs incurred in connection with the sale, including but not limited to trustees' and attorneys' fees, if any, (B) to all Sums Secured by this Security Instrument, and (C) any excess to the Person or Persons legally entitled to it

### 29. RECONVEYANCE

Upon payment of all Sums Secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all Secured Notes to Trustee  Trustee shall reconvey the Property without warranty to Borrower  Lender may charge Borrower a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (including the Trustee) for services rendered and the charging of the fee is permitted, whether expressly or by lack of express prohibition, under applicable law  If the fee charged does not exceed any maximum fee set by applicable law, the fee is conclusively presumed to be reasonable

### 30. STATEMENT OF OBLIGATION

Lender may collect a fee of $60 00, or such greater maximum amount as may from time to time be allowed by law, for furnishing any statement of obligation with respect to this Security Instrument or the Secured Notes

SD001M (2004-03-2)                    DEED OF TRUST-ADJUSTABLE                    CA
                                            Page 13

06 1129992

0042956367

**31.    ( X )   QUICK QUALIFYING LOAN PROGRAM**



I have qualified for this loan by making statements of fact which were relied upon by Lender to approve the loan rapidly  This loan is called a "Quick Qualifying Loan " I have stated and I confirm that  (A) I do not have any other Quick Qualifying Loans with Lender, (B) I have agreed to not further encumber the Property and do not intend to further encumber the Property for at least six months after the date of the Secured Notes and this Security Instrument, and (C) If I am purchasing the Property, all of the terms of the purchase agreement submitted to Lender are true and the entire down payment is cash from my own funds

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument  If I am in such default, Lender may, at its option, increase the interest rate and margin subject to the Lifetime Rate Cap stated in the Secured Notes

**32    ( X )   OWNER OCCUPANCY**

Lender has relied upon statements of fact which I have made to qualify for this loan  I have stated and confirm that  (A) the Property is my personal and primary residence, (B) I will occupy the Property not later than 30 days after this Security Instrument is recorded, and (C) I will use the Property as my residence for at least 12 months from the date this Security Instrument is recorded

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument  If I am in such default, Lender may, at its option, increase the interest rate and margin, subject to the Lifetime Rate Cap stated in the Secured Notes

**( X )   VALUE INDICATES THAT THE PARAGRAPH APPLIES.**

**THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.**

SD001N (2004-03-2)                    DEED OF TRUST-ADJUSTABLE                    **CA**
                                             Page 14

**06 1129992**

0042956367

**BY SIGNING BELOW,** I accept and agree to the promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded in proper official records

**(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)**

**BORROWER(S):**

_____     **(Seal)**
TITO AGUIRRE

_____     **(Seal)**

_____     **(Seal)**

_____     **(Seal)**

**ATTACH INDIVIDUAL NOTARY ACKNOWLEDGEMENT**

SD001 (2004-03-1)        [AF1 (2004-03-1)]            Page 15                         CA
                         [AL1 (2004-03-1)]

06 1129992

0042956367

**BORROWER(S)' SPOUSE(S):** The undersigned hereby joins in this Security Instrument for the sole purpose of encumbering, subordinating, conveying and/or waiving any current or potential interest in the Property  By signing below, the undersigned encumbers, subordinates, conveys and/or waives any and all rights, interests or claims in the Property, including, but not limited to, homestead, dower, marital or joint-occupancy rights  No personal liability under the Note is hereby incurred by the undersigned joining spouse

**(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)**

**BORROWER(S)' SPOUSE(S):**

_____ (Seal)

_____ (Seal)

_____ (Seal)

**ATTACH INDIVIDUAL NOTARY ACKNOWLEDGEMENT**

SD001 (2004-03-1)                                              Page 16                                    CA

[AL1 (2004-03-1)]

06 1129992

*18*

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _Los Angeles_ } ss

On _May 16 2006_ before me, _W Duarte Notary Public_
Date                         Name and Title of Officer (e.g. "Jane Doe, Notary Public")

personally appeared _Tito Aguirre_
Name(s) of Signer(s)

☐ personally known to me
☑ proved to me on the basis of satisfactory evidence

to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument

WITNESS my hand and official seal.

_W Duartl_
Signature of Notary Public

W. DUARTE
Commission # 1446088
Notary Public - California
San Bernardino County
My Comm. Expires Oct 19, 2007

──────────── OPTIONAL ────────────
*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document*

### Description of Attached Document

Title or Type of Document _____

Document Date _____ Number of Pages _____

Signer(s) Other Than Named Above _____

### Capacity(ies) Claimed by Signer

Signer's Name _____

☐ Individual
☐ Corporate Officer — Title(s) _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney-in-Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other _____

Signer Is Representing _____

| RIGHT THUMBPRINT OF SIGNER |
|---|
| Top of thumb here |

© 1999 National Notary Association · 9350 De Soto Ave · P.O. Box 2402 · Chatsworth, CA 91313-2402 · www.nationalnotary.org    Prod. No. 5907    Reorder: Call Toll-Free 1-800-876-6827

**06 1129992**

**WORLD SAVINGS BANK, FSB**

# E X H I B I T "A"

## LEGAL DESCRIPTION

**LOAN NO.  0042956367**

ALL THAT CERTAIN REAL PROPERTY SITUATED IN THE COUNTY OF **LOS ANGELES** STATE
OF **CALIFORNIA**, DESCRIBED AS FOLLOWS

TAPE <u>ONLY</u> THE LEGAL DESCRIPTION TO THIS PAGE.

SD001 (2003-03-1)                                    Page 17 of 17                                    **CA**

06 1129992

## EXHIBIT "A"

All that certain real property situated in the County of Los Angeles, State of
California, described as follows:

Lot 34 of Tract No. 19348, in the City of La Puente, County of Los Angeles, State
of California, as per map recorded in Book 538, page(s) 32 to 35 inclusive of
Maps, in the office of the County recorder of said County.

APN-8251-021-020

06 1129992

**EXHIBIT   D**

WORLD SAVINGS BANK, FSB

# ADJUSTABLE RATE MORTGAGE NOTE

## PICK-A-PAYMENT LOAN

### GDW AVERAGE DEPOSIT ACCOUNT RATE (COST OF SAVINGS) INDEX

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, MY MONTHLY PAYMENT AND MY UNPAID PRINCIPAL BALANCE. MY MONTHLY PAYMENT INCREASES, MY INTEREST RATE INCREASES AND MY PRINCIPAL BALANCE INCREASES ARE LIMITED. THIS NOTE IS SECURED BY A SECURITY INSTRUMENT OF THE SAME DATE.

LOAN NUMBER: **0042956367**                                    DATE: **May 12, 2006**

BORROWER(S): **TITO AGUIRRE, A MARRIED MAN**   sometimes called "Borrower" and sometimes simply called "I" or "me."

PROPERTY ADDRESS: **638 MOLINAR AVE, LA PUENTE, CA  91744-4028**

**1.  BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. **$301,000.00** , called "Principal," plus interest, to the order of the Lender. The Lender is **WORLD SAVINGS BANK, FSB, a FEDERAL SAVINGS BANK,, ITS SUCCESSORS AND/OR ASSIGNEES**, or anyone to whom this Note is transferred.

**2.  INTEREST**

**(A)    Interest Rate**
Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at the yearly rate of **7.010%**. The interest rate I will pay  may change as described in this Section 2.  Interest will be charged on the basis of a twelve month year and a thirty day month.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**(B)    Interest Change Dates**
The interest rate I will pay may change on the **15th** day of **July, 2006** and on the same day every month thereafter. Each date on which my interest rate could change is called an "Interest Change Date." The new rate of interest will become effective on each Interest Change Date.

**(C)    Interest Rate Limit**
My lifetime maximum interest rate limit is **11.950%**, called "Lifetime Rate Cap."

0042956367

**(D)   Index**

Beginning with the first Interest Change Date, my interest rate will be based on an "Index." The Index is the weighted average of the interest rates in effect as of the last day of each calendar month on the deposit accounts of the federally insured depository institution subsidiaries ("Subsidiaries") of Golden West Financial Corporation ("GDW"), as made available by GDW. Included in the deposit accounts for purposes of the Index calculation are all of the items and adjustments that GDW uses to calculate the line item currently called "cost of deposits" that appears in its quarterly and annual reports to shareholders as well as in other financial reports publicly distributed by GDW. The Index does not include deposit accounts owned by GDW or its Subsidiaries or other affiliates. The calculation of the Index includes adjustments for the effects of financial instruments related to the deposit accounts and other adjustments determined by GDW in its sole discretion as appropriate to accurately reflect the weighted average of interest rates on the deposit accounts. If an index is substituted as described in Section 2(F) of this Note, the alternative index will become the Index. The most recent Index figure available on each Interest Change Date is called the "Current Index."

**(E)   Calculation of Interest Rate Changes**

Lender will calculate my new interest rate by adding **3.450** percentage points, called the "Margin," to the Current Index. Subject to the limit stated in Section 2(C) above, the result of this calculation will be my new interest rate until the next Interest Change Date.

If Lender fails to utilize the entire interest rate increase to which it is entitled under this Note on any Interest Change Date by failing to add all or part of the allowable Margin to the Current Index, then Lender may add any such allowable Margin to the Current Index on any future Interest Change Date. Lender may not, at a later date, "carryover" or add interest to which it is not entitled under this Note on any Interest Change Date.

**(F)   Alternative Index**

The Lender may choose an alternative index to be the Index if the Index is no longer available.  For purposes of this Section 2(F) the Index is not "available" if:  (a) the Index is for any reason no longer published; or (b) the Lender, in its sole discretion, determines that the Index is calculated in a substantially different manner or based on substantially different information than at the time the Index became applicable to this Note; or (c) applicable laws or regulations prevent the Lender from using the Index to calculate interest under this Note.  The selection of the alternative index shall be at Lender's sole discretion.  The alternative index may be a national or regional index or another type of index approved by the Lender's primary regulator.  The Lender will give me notice of the alternative index.

3.  **PAYMENTS**

**(A)   Time and Place of Payments**

I will pay Principal and interest by making payments every month.

I will make my monthly payments on the **15th** day of each month beginning on **July 15, 2006**. I will make these payments every month until I have paid (i) all the Principal and interest; and (ii) any other charges described below that I may owe under this Note; and (iii) any charges that may be due under the Security Instrument. If, on **June 15, 2036**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **1901 HARRISON STREET, OAKLAND, CALIFORNIA 94612** or at a different place if required by notice from the Lender.

**(B)   Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ **1,105.05**. This amount will change as described in Sections 3(C) and 3(D) below. My initial  monthly payment amount was selected by me from a range of initial payment amounts approved by Lender and may not be sufficient to pay the entire amount of interest accruing on the unpaid Principal balance.

**(C)   Payment Change Dates**

My monthly payment will change as required by Section 3(D) below beginning on the **15th** day of **July, 2007** and on that day every **12th** month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment will also change at any time Section 3(F) or 3(G) below requires me to pay a different amount.

0042956367

**(E)   Deferred Interest; Additions to My Unpaid Principal**

From time to time, my monthly payments may be insufficient to pay the total amount of monthly interest that is due. If this occurs, the amount of interest that is not paid each month, called "Deferred Interest," will be added to my Principal and will accrue interest at the same rate as the Principal.

**(F)   Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid principal balance can never exceed **125%** of the Principal I originally borrowed, called "Principal Balance Cap." If, as a result of the addition of deferred interest to my unpaid principal balance, the Principal Balance Cap limitation would be exceeded on the date that my monthly payment is due, I will instead pay a new monthly payment. Notwithstanding Sections 3(C) and 3(D) above, I will pay a new monthly payment which is equal to, an amount that will be sufficient to repay my then unpaid principal balance in full on the Maturity Date at the interest rate then in effect, in substantially equal payments.

**(G)   Payment Cap Limitation; Exceptions**

Beginning with the **10th** Payment Change Date and every 5th Payment Change Date thereafter, my monthly payment will be calculated as described in Section 3(D) above except that the Payment Cap limitation will not apply. Additionally, the Payment Cap limitation will not apply on the final Payment Change Date.

**(H)   Notice of Payment Changes**

The Lender will deliver or mail to me a notice of any changes in the amount of my monthly payment, called "Payment Change Notice," before each Payment Change Date. The Payment Change Notice will include information required by law.

**4.   FAILURE TO MAKE ADJUSTMENTS**

If for any reason Lender fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Lender may, upon discovery of such failure, then make the adjustments as if they had been made on time. I also agree not to hold Lender responsible for any damages to me which may result from Lender's failure to make the adjustment and to let the Lender, at its option, apply any excess monies which I may have paid to partial prepayment of unpaid Principal.

**5.   BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due.  A payment of Principal before it is due is called a "Prepayment". When I make a Prepayment, I will tell the Lender in writing that I am doing so.  The Lender may require that any partial Prepayments be made on the date my regularly scheduled payments are due. If I make a partial Prepayment, there will be no changes in the due dates or amount of my regularly scheduled payments unless the Lender agrees to those changes in writing.  I may pay deferred interest on this Note at any time without charge and such payment will not be considered a "Prepayment" of Principal.  During the first 3 years of the loan term if I make one or more Prepayments that, in the aggregate, exceed $5,000 in any calendar month, I must pay a prepayment charge equal to 2% of the amount such Prepayments exceed $5,000 in that calendar month. After the first 3 years of the loan term, I may make a full or partial Prepayment without paying any prepayment charge.

6.   MAXIMUM LOAN CHARGES

0042956367

**(B)   Default**

I will be in default if (i) I do not pay the full amount of each monthly payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under this Note or the Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading.

**(C)   Notice of Default**

If I am in default, the Lender may send me a written notice, called "Notice of Default," telling me that if I do not pay the overdue amount by a certain date, the Lender may require me to pay immediately the amount of Principal which has not been paid and all the interest that I owe on that amount, plus any other amounts due under the Security Instrument.

**(D)   No Waiver by Lender**

Even if, at a time when I am in default, the Lender does not require me to pay immediately in full as described above, the Lender will still have the right to do so if I am in default at a later time.

**(E)   Payment of Lender's Costs and Expenses**

The Lender will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses may include, for example, reasonable attorneys' fees and court costs.

**8.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me or any Borrower at **638 MOLINAR AVE, LA PUENTE, CA  91744-4028**, or at a single alternative address if I give the Lender notice of my alternative address. I may give notice to Lender of a change in my address in writing or by calling Lender's customer service telephone number provided on my billing statement.  I may designate only one mailing address at a time for notification purposes.

Except as permitted above for changes of address, any notice that must be given to the Lender under this Note will be given by mailing it by first class mail to the Lender at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who takes over these obligations is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.   WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

**11.   SECURED NOTE - ACCELERATION**

In addition to the protections given to the Lender under this Note, the Security Instrument dated the same date as this Note gives the Lender security against which it may proceed if I do not keep the promises which I made in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note and includes the following Paragraph **26:**

**AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**

**Acceleration of Payment of Sums Secured.** Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred

0042956367

**Exception to Acceleration of Payment of Sums Secured.** If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if:

      (i)    Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender;

      (ii)    Lender approves the creditworthiness of the transferee in writing;

      (iii)    transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards;

      (iv)    an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the balance of Principal and interest due under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender; and

      (v)    the transferee executes an assumption agreement which is satisfactory to Lender.

The loan may be assumed under its then existing terms and conditions with one exception; the Lifetime Rate Cap may be changed. The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes.

**12.  GOVERNING LAW; SEVERABILITY**

    **This Note shall be governed by and construed under federal law and federal rules and regulations including those for federally chartered savings institutions, called "Federal Law."** In the event that any of the terms or provisions of this Note are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Note.

**13.  CLERICAL ERRORS**

    In the event the Lender at any time discovers that this Note or the Security Instrument or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from the Lender, to reexecute any Loan Documents that are necessary to correct any such error(s) and I also agree that I will not hold the Lender responsible for any damage to me which may result from any such error.

**14.  LOST, STOLEN OR MUTILATED DOCUMENTS**

    If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Lender delivers to me an indemnification in my favor, signed by the Lender, then I will sign and deliver to the Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

**THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.**

0042956367

## SIGNATURE PAGE

NOTICE TO BORROWER(S):

BY SIGNING THIS NOTE YOU AGREE TO PAY A PREPAYMENT CHARGE IN CERTAIN CIRCUMSTANCES. PLEASE CAREFULLY READ THIS ENTIRE NOTE (INCLUDING THE PREPAYMENT PROVISION) BEFORE YOU SIGN IT.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

BORROWER(S):

_____ (Seal)

TITO AGUIRRE

# EXHIBIT   E



**This page is part of your document - DO NOT DISCARD**



## 20130374891



**Pages:**
**0005**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**03/13/13 AT 08:00AM**

| | |
|---|---|
| FEES: | 27.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 27.00 |



**LEADSHEET**

**201303130120001**

**00007379484**

**004710322**

**SEQ:**
**09**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**                t35

03/13/2013

*20130374891*

Recording requested by:
**LSI Title Company**

When Recorded Mail To:
**NDEx West, L.L.C.**
**15000 Surveyor Boulevard, Suite 500**
**Addison, Texas 75001-9013**

APN #: **8251-021-020**
Property Address:
**638 MOLINAR AVE**
**LA PUENTE, CALIFORNIA 91744**

DFF20130015000535

Space above this line for Recorder's use only

Trustee Sale No. : **20130015000535**          Title Order No.: **130036458**

## IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER
## DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION, and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this Notice of Default may be recorded (which date of recordation appears on this notice).**

**This amount is $8,571.47 as of 03/11/2013 and will increase until your account becomes current.  While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage.  If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing.  In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.**

**Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things. (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).**

**Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor**

FCUS_NoticeOfDefault.rpt - Record - (10/31/2012) - Ver-35                                        Page 1 of 3

3

**IMPORTANT NOTICE**
**NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST**

Trustee Sale No. : 20130015000535          Title Order No.: 130036458

permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**WELLS FARGO HOME MORTGAGE, A DIVISION OF WELLS FARGO BANK, N.A.**
**c/o NDEX WEST, LLC**
**15000 Surveyor Boulevard, Suite 500**
**Addison, Texas 75001-9013**
**(866) 795-1852**

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.
Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

## REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN THAT: NDEX WEST, LLC is the original Trustee, duly appointed Substituted Trustee, or acting as Agent for the Trustee or Beneficiary under a Deed of Trust dated 05/12/2006, executed by TITO AGUIRRE, as Trustor, to secure obligations in favor of WORLD SAVINGS BANK, FSB, as Beneficiary Recorded on 05/23/2006 as Instrument No. 06 1129992 of official records in the Office of the Recorder of LOS ANGELES County, California, as more fully described on said Deed of Trust. Including a Note(s)/ Unconditional Guaranty which had a principal amount of $301,000.00 that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the Beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of:

THE INSTALLMENT OF PRINCIPAL AND INTEREST WHICH BECAME DUE ON 11/1/2012 AND ALL SUBSEQUENT INSTALLMENTS, TOGETHER WITH LATE CHARGES AS SET FORTH IN SAID NOTE AND DEED OF TRUST, ADVANCES, ASSESSMENTS, FEES, AND/OR TRUSTEE FEES, IF ANY.

NOTHING IN THIS NOTICE SHALL BE CONSTRUED AS A WAIVER OF ANY FEES OWING TO THE BENEFICIARY UNDER THE DEED OF TRUST, PURSUANT TO THE TERMS OF THE LOAN DOCUMENTS.

That by reason thereof, the present beneficiary under said Deed of Trust and/or its loan servicer hereby declare(s) all obligations secured thereby immediately due and payable, invoke(s) the power of sale under said Deed of Trust, and elect(s) to sell the property described therein in satisfaction of those obligations without prejudice to any other default remedies permitted by applicable law.

Branch :1LA,User :AD17     Order: 0000000   Title Officer: 00   Comment:                                    Station Id :PT6X

**IMPORTANT NOTICE**
**NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST**

Trustee Sale No. : 20130015000535        Title Order No.: 130036458

**DATED: 03/11/2013**

**NDEX WEST, LLC as Agent for Beneficiary**

By: _____

**Rachel Silverman**

FCUS_NoticeOfDefault.rpt - Record - (10/31/2012) - Ver-35          Page 3 of 3

(Page 2 of 2)

# DECLARATION OF COMPLIANCE

*(California Civil Code Section 2923.55(c))*

Wells Fargo Bank, N.A.
3476 Stateview Blvd.
Fort Mill, SC 29715

Borrower(s): TITO AGUIRRE

Property Address: 638 MOLINAR AVE
LA PUENTE CA 91744

The undersigned, as an authorized agent or employee of the mortgage servicer named below, declares that:

1. ☒ The mortgage servicer has contacted the borrower pursuant to California Civil Code §2923.55(b)(2) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure". Thirty (30) days, or more, have passed since the initial contact was made.

2. ☐ The mortgage servicer has exercised due diligence to contact the borrower pursuant to California Civil Code §2923.55(f) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure". Thirty (30) days, or more, have passed since these due diligence efforts were satisfied.

3. ☐ No contact was required by the mortgage servicer because the individual(s) identified above did not meet the definition of "borrower" pursuant to subdivision (c) of California Civil Code §2920.5.

4. ☐ The requirements of California Civil Code §2923.55 do not apply because the loan is not secured by a first lien mortgage or deed of trust on "owner-occupied" residential real property as defined by California Civil Code §2924.15(a).

I certify that this declaration is accurate, complete and supported by competent and reliable evidence which the mortgage servicer has reviewed to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

Wells Fargo Bank, N.A.

By: *Micaela D Hayes*
Name: Micaela D Hayes
Title: VP of Loan Documentation
Date: 02/14/2013

053_CA_V3

**EXHIBIT F**



**This page is part of your document - DO NOT DISCARD**

## 20130893076





**Pages:**
**0003**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**06/14/13 AT 08:00AM**

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



**L E A D S H E E T**



**201306140280005**

**00007869943**



**004936440**

**SEQ:**
**11**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

E452328                            t35

*2*

Recording requested by:
**LSI Title Company**

When Recorded Mail To:
**NDEx West, L.L.C.**
**15000 Surveyor Boulevard, Suite 500**
**Addison, Texas  75001-9013**
**(866) 795-1852**

APN #: **8251-021-020**
Property Address:
**638 MOLINAR AVE**
**LA PUENTE, CALIFORNIA  91744**

06/14/2013
*20130893076*

NOTS20130015000535

Space above this line for Recorder's use only

Trustee Sale No. :  **20130015000535**          Title Order No.:  **130036458**          FHA/VA/PMI No.:

# NOTICE OF TRUSTEE'S SALE

**ATTENTION RECORDER:** THE FOLLOWING REFERENCE TO AN ATTACHED SUMMARY APPLIES ONLY TO COPIES PROVIDED TO THE TRUSTOR, NOT TO THIS RECORDED ORIGINAL NOTICE.

**NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED**

注 : 本文件包含一个信息摘要

참고사항: 본 첨부 문서에 정보 요약서가 있습니다

**NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO**

**TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP**

**LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY**

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 05/12/2006.  UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.  IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

**NDEx West, L.L.C.**, as duly appointed Trustee under and pursuant to Deed of Trust **Recorded on 05/23/2006 as Instrument No. 06 1129992** of official records in the office of the County Recorder of **LOS ANGELES** County, State of CALIFORNIA.
**EXECUTED BY:       TITO AGUIRRE,**
WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK/CASH EQUIVALENT or other form of payment authorized by California Civil Code 2924h(b), (payable at time of sale in lawful money of the United States).
**DATE OF SALE:       07/17/2013       TIME OF SALE:       11:00 AM**
**PLACE OF SALE:       BY THE FOUNTAIN LOCATED AT 400 CIVIC CENTER PLAZA, POMONA, CA 91766.**
**STREET ADDRESS** and other common designation, if any, of the real property described above is purported to be:
                    **638 MOLINAR AVE, LA PUENTE, CALIFORNIA 91744**
**APN#:**       **8251-021-020**

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. Said sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in said note(s), advances, under the terms of said Deed of Trust, fees, charges

FCUS NoticeOfTrusteeSale rpt - Record - 05/29/2013 - Ver-38                                                              **Page 1 of 2**

| Trustee Sale No. : 20130015000535 | Title Order No.: 130036458 | FHA/VA/PMI No.: |

and expenses of the Trustee and of  the trusts created by said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is **$272,454.73**. The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located.

**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call 714-730-2727 for information regarding the trustee's sale or visit this Internet Web site www.lpsasap.com for information regarding the sale of this property, using the file number assigned to this case 20130015000535. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

FOR TRUSTEE SALE INFORMATION PLEASE CALL:

**AGENCY SALES & POSTING 2**
**3210 EL CAMINO REAL, SUITE 200**
**IRVINE, CA 92602**
**714-730-2727**
**www.lpsasap.com**

NDEx West, L.L.C. MAY BE ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

**NDEx West, L.L.C. as Trustee**

_____          Dated: **06/12/2013**
BY: Tanna Vazquez

FCUS_NoticeOfTrusteeSale.rpt - Record - 05/29/2013 - Ver-38                    Page 2 of 2

**EXHIBIT G**



**This page is part of your document - DO NOT DISCARD**



## 20131403791



**Pages:**
**0003**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**09/27/13 AT 08:00AM**

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



**L E A D S H E E T**



201309271030002

00008360781

005800392

**SEQ:**
12

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**                t35

Recording requested by:
**LSI Title Company**

When Recorded Mail To:
**NDEx West, L.L.C.,**
**15000 Surveyor Boulevard, Suite 500**
**Addison, Texas  75001-9013**
**(866) 795-1852**

APN #: 8251-021-020
Property Address:
**638 MOLINAR AVE**
**LA PUENTE, CALIFORNIA 91744**

09/27/2013

*20131403791*

NOTS20130015000535

Space above this line for Recorder's use only

Trustee Sale No. : 20130015000535          Title Order No.: 130036458          FHA/VA/PMI No.:

## NOTICE OF TRUSTEE'S SALE

**ATTENTION  RECORDER:  THE  FOLLOWING  REFERENCE  TO  AN  ATTACHED  SUMMARY  APPLIES ONLY TO COPIES PROVIDED TO THE TRUSTOR, NOT TO THIS RECORDED ORIGINAL NOTICE.**

**NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED**
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
**NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO**
**TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP**
**LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY**

**YOU  ARE  IN  DEFAULT  UNDER  A   DEED  OF  TRUST,  DATED  05/12/2006.   UNLESS  YOU  TAKE  ACTION TO  PROTECT  YOUR  PROPERTY,  IT  MAY  BE  SOLD  AT  A  PUBLIC  SALE.    IF  YOU  NEED  AN EXPLANATION  OF  THE  NATURE  OF  THE  PROCEEDING  AGAINST  YOU,  YOU  SHOULD  CONTACT  A LAWYER.**

**NDEx West, L.L.C.,** as duly appointed Trustee under and pursuant to Deed of Trust **Recorded on 05/23/2006 as Instrument No. 06 1129992** of official records in the office of the County Recorder of **LOS ANGELES** County, State of CALIFORNIA.
**EXECUTED BY:        TITO AGUIRRE,**
WILL  SELL  AT  PUBLIC  AUCTION  TO  HIGHEST  BIDDER  FOR  CASH,  CASHIER'S  CHECK/CASH EQUIVALENT  or  other  form  of  payment  authorized  by  California  Civil  Code  2924h(b),  (payable  at  time  of  sale  in lawful money of the United States).
**DATE OF SALE:        10/23/2013      TIME OF SALE:        11:00 AM**
**PLACE OF SALE:      BY THE FOUNTAIN LOCATED AT 400 CIVIC CENTER PLAZA, POMONA, CA 91766.**
**STREET ADDRESS** and other common designation, if any, of the real property described above is purported to be:
**638 MOLINAR AVE, LA PUENTE, CALIFORNIA 91744**
**APN#:          8251-021-020**

The  undersigned  Trustee  disclaims  any  liability  for  any  incorrectness  of  the  street  address  and  other  common designation,  if  any,  shown  herein.  Said  sale  will  be  made,  but  without  covenant  or  warranty,  expressed  or  implied, regarding  title,  possession,  or  encumbrances,  to  pay  the  remaining  principal  sum  of  the  note(s)  secured  by  said  Deed  of Trust,  with  interest  thereon,  as  provided  in  said  note(s),  advances,  under  the  terms  of  said  Deed  of  Trust,  fees,  charges
FCUS_NoticeOfTrusteeSale.rpt - Record - 05/29/2013 - Ver-38                                                      Page 1 of 2

*3*

| Trustee Sale No. : **20130015000535** | Title Order No.: **130036458** | FHA/VA/PMI No.: |

and expenses of the Trustee and of the trusts created by said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is **$276,083.79**. The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located.

**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call 714-730-2727 for information regarding the trustee's sale or visit this Internet Web site www.lpsasap.com for information regarding the sale of this property, using the file number assigned to this case 20130015000535. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

FOR TRUSTEE SALE INFORMATION PLEASE CALL:
**AGENCY SALES & POSTING 2**
**3210 EL CAMINO REAL, SUITE 200**
**IRVINE, CA 92602**
**714-730-2727**
**www.lpsasap.com**

NDEx West, L.L.C. As Trustee

BY: Ric Juarez     **Associate Director**

**NDEx West, L.L.C. MAY BE ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

Dated: **09/25/2013**

**CERTIFICATE OF SERVICE**

I am a resident of the State of California, over the age of eighteen (18) and not a party to the within action. My business address is 100 NORTH CITRUS STREET, SUITE 408, WEST COVINA, CA 91791. On April 23, 2015, I served the following document(s): **VERIFIED FIRST AMENDED COMPLAINT,** on the interested parties listed below as follows:

AFRCT, LLP
Melissa M. Coyle, Esq.
199 S. Los Robles Ave., Suite 600
Pasadena, CA 91101                    Attorney for Wells Fargo Bank, N.A.

BDFTW, LLP
James T. Lee, Esq.
20955 Pathfinder Road, Suite 300
Diamond Bar, CA 91765                  Attorney for Ndex West, LLC

☒    (BY MAIL) I deposited such envelope(s) in the mail at West Covina, California. The envelope was mailed with postage thereon fully prepaid. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at West Covina, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☒    (CM/ECF Electronic Filing) I caused the above document(s) to be transmitted to the office(s) of the addressee(s) listed above by electronic mail at the email address(es) set forth above pursuant to Fed.R.Civ.P.5(d)(1). A Notice of Electronic Filing (NEF) is generated automatically by the ECF system upon completion of an electronic filing. The NEF, when e-mailed to the e-mail address of record in the case, shall constitute the proof of service as required by Fed.R.Civ.P.5(d)(1). A copy of the NEF shall be attached to any document served in the traditional manner upon any party appearing pro se."

☒    (Federal) I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on April 23, 2015, at West Covina, California.

Laura Dassori
Type or Print Name                              Signature