*E-FILED*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-1816-GHK (MRWx) | Date | July 2, 2015 |
|---|---|---|---|
| Title | *Tito Aguirre, et al. v. Wells Fargo Bank, N.A., et al.* | | |

| Presiding: The Honorable | **GEORGE H. KING, CHIEF U. S. DISTRICT JUDGE** |
|---|---|

| Beatrice Herrera | N/A | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** **(In Chambers) Order Re:** Defendant Wells Fargo N.A.'s Motion to Dismiss First Amended Complaint (Dkt. 19)

This matter is before us on the above-captioned Motion. We have considered the papers filed in support of and in opposition to the Motion and deem it appropriate for resolution without oral argument. L.R. 7-15. As the Parties are familiar with the facts, we will repeat them only as necessary. Accordingly, we rule as follows:

## I.    Background

On January 28, 2015, Tito Aguirre ("Mr. Aguirre") brought this action in state court against Defendant Wells Fargo Bank, N.A. ("Wells Fargo") and Defendant NDeX West, LLC ("NdeX") (collectively, "Defendants"). (Dkt. 1.) On March 12, 2015, Wells Fargo removed the case to federal court on the basis of diversity and federal question jurisdiction. (*Id.*) NDeX filed a declaration of non-monetary status in state court before removal and is a nominal party. (NOR, Ex. B.) On April 23, 2015, after Wells Fargo filed a Motion to Dismiss but before we ruled on the Motion, Mr. Aguirre filed a First Amended Complaint ("FAC") adding Yolanda Aguirre ("Mrs. Aguirre") as a Plaintiff. (Dkt. 14.) On May 21, 2015, Wells Fargo filed this Motion to Dismiss the FAC. (Dkt. 19.)

Plaintiffs allege that, on or about May 12, 2006, Mr. Aguirre borrowed $301,000 (the "Loan") to purchase a residence in La Puente, California (the "Property"). (FAC at ¶¶ 3, 15, Ex. D.) A deed of trust ("DOT") was executed and recorded on the Property. (*Id.* at ¶ 15, Ex. C.) According to the FAC, the Loan was "under review for loss mitigation options from July 29, 2010 through August 22, 2014." (*Id.* at ¶ 45.) Foreclosure proceedings are pending on the Property but not completed. (*See, e.g.*, *id.* at ¶ 2 ("Defendants are engaged in unauthorized foreclosure proceedings . . . ."); *id.* at ¶ 102 ("Plaintiffs are now in the process of a foreclosure sale.").)

In or about February 2013, Mr. Aguirre was three months behind on his mortgage payments, so he contacted his servicer Wells Fargo to inquire about the reinstatement amount of the Loan. (*Id.* at ¶¶ 16, 24.) Wells Fargo "represented to [Mr.] Aguirre that if [he] made the full reinstatement amount to Wells Fargo, [his] account would be brought current." (*Id.* at ¶ 25; *see also id.* at ¶ 16 ("Plaintiff Tito Aguirre contacted his servicer Wells Fargo and obtained a quote of the exact dollar amount required to

**E-FILED**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-1816-GHK (MRWx) | Date | July 2, 2015 |
|---|---|---|---|
| Title | *Tito Aguirre, et al. v. Wells Fargo Bank, N.A., et al.* | | |

bring the loan current again.").)  But then, when Mr. Aguirre "produced the exact dollar amount to Wells Fargo within the operative timeframe in an attempt to bring the loan current, Wells Fargo refused to accept" the payment.  (*Id.* at ¶ 26.)  On March 11, 2013, NDeX recorded a Notice of Default ("NOD") on the Property.  (*Id.*, Ex E.)  On June 12, 2013, a Notice of Trustee's Sale was entered on the Property by NDeX, setting July 17, 2013 as the date for public auction.  (*Id.*, Ex. F.)  The sale never occurred, and on September 25, 2013, a new Notice of Trustee's Sale was recorded, setting October 23, 2013 as the date for public auction.  (*Id.*, Ex. G.)

The FAC does not indicate what happened next, but Wells Fargo requests that we take judicial notice of various public documents that provide some further information.  (*See* Dkt. 20.)  Because they are public documents and Plaintiffs do not object, the request is **GRANTED**.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (noting that judicial notice may be taken of public records).  According to these documents, on October 22, 2013, the day before the trustee's sale was set to occur, Mr. Aguirre filed for Chapter 13 bankruptcy.  (RJN, Ex. F.)  His petition was dismissed on November 13, 2013, however, for failure to file required documents.  (*Id.*, Ex. G.)  Plaintiffs then jointly filed for Chapter 7 bankruptcy on February 6, 2014, but that petition was promptly dismissed as well.  (*Id.*, Exs. H, I.)  On March 4, 2014, Mr. Aguirre executed a grant deed transferring the Property as a bona fide gift to Mrs. Aguirre and himself as joint tenants.  (*Id.*, Ex. J.)  Two days later, on March 6, 2014, Mrs. Aguirre filed for Chapter 7 bankruptcy by herself.  (*Id.*, Ex. K.)  The petition was dismissed on March 24, 2014 for failure to file required documents.  (*Id.*, Ex. L.)  Mrs. Aguirre filed another petition on April 7, 2014, and that was, again, dismissed for failure to file require documents.  (*Id.*, Exs. M, N.)[1]

The FAC alleges that Wells Fargo "had no intention to accept [Mr.] Aguirre's reinstatement payment [in or about February 2013] or to reinstate the loan and wanted to instead foreclose on the [] Property and profit thereby."  (FAC at ¶ 27.)  The FAC further alleges that Wells Fargo (1) recorded the NOD on the Property and initiated a trustee's sale without following procedures required by California state law, (*id.* at ¶¶ 36-43); (2) charged "statutorily forbidden late fees accrued during . . . periods of loss mitigation attempts," (*id.* at ¶ 46); and (3) "repeatedly and continuously made harassing phone calls to Plaintiffs to collect the debt after Defendants failed to honor to [sic] reinstate the loan."  (*Id.* at ¶ 99.)  Mr. and Mrs. Aguirre (collectively, "Plaintiffs") assert twelve claims, discussed below, in connection with these allegations.

**II.     Legal Standard**

To survive a motion to dismiss for failure to state a claim, a complaint must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  It must contain factual allegations sufficient to "state a claim to relief that is plausible on its face."  *Id.* at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  Although we must accept the allegations of the complaint as true and construe them in the light most favorable to the plaintiff, we need not accept as true legal conclusions "cast in the form of

---

[1] What happened after this is unclear.  As already mentioned, the FAC suggests that the Property still has not been sold.

*E-FILED*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-1816-GHK (MRWx) | Date | July 2, 2015 |
|---|---|---|---|
| Title | *Tito Aguirre, et al. v. Wells Fargo Bank, N.A., et al.* | | |

factual allegations." *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

### III.    Fraud

The elements of fraud are: (1) misrepresentation in the form of a false representation, concealment, or nondisclosure, (2) knowledge of falsity (scienter), (3) intent to induce reliance, (4) justifiable reliance, and (5) resulting damage. *Small v. Fritz Cos.*, 30 Cal. 4th 167, 173 (2003). Federal Rule of Civil Procedure 9(b) imposes a heightened pleading requirement for claims involving fraud. Plaintiffs "must state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. Proc. 9(b). This means that Plaintiffs must allege the "who, what, when, where, and how" supporting any misrepresentation allegations. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

Plaintiffs fail to meet this standard. The FAC alleges that in February 2013 "Wells Fargo[] represented to [Mr.] Aguirre that if [he] made the full reinstatement amount to Wells Fargo, [his] account would be brought current." (FAC ¶ 25.) No other facts are alleged concerning the representation. The individual or individuals who made the representation on Wells Fargo's behalf are not identified, and it is not clear what authority, if any, the individuals had to make such representations. *See Ungerleider v. Bank of Am. Corp.*, 2010 WL 5392820, at *5 (C.D. Cal. Dec. 27, 2010) (finding that fraud claim fails where "Plaintiff does not identify the individuals who made the misrepresentation or false statements, nor does he allege their authority to speak on behalf of Defendants"); *see also Lazar v. Superior Court*, 12 Cal. 4th 631 (1996) ("A plaintiff's burden in asserting a fraud claim against a corporate employer is even greater. In such a case, the plaintiff must allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.").

Plaintiffs also fail to adequately allege reliance or damages. The FAC states that "[a]s a result of [Mr.] Aguirre's reliance on Wells Fargo's misrepresentations, Plaintiffs have suffered and continue to suffer pecuniary damages due to excessively high mortgage payments, an increasing principal balance, threatened loss of the Subject Property, mounting fees, costs and penalties." (*Id.* at ¶¶ 29-31.) The connection between these harms and Mr. Aguirre's reliance is not plausible based on the facts alleged. If Wells Fargo had bluntly, without any misrepresentation, told Mr. Aguirre that it would not accept a reinstatement payment from him, Plaintiffs would have suffered all the same damages described above. The Loan would have remained in default, late fees and other charges would have continued to accrue, and the Property would still be heading toward a foreclosure sale. To plead damages as a result of Wells Fargo's fraud, Plaintiffs must allege that Mr. Aguirre took some detrimental action in reliance on Wells Fargo's misrepresentation. There are no allegations of that sort.

Accordingly, Wells Fargo's Motion to Dismiss is **GRANTED** as to Plaintiffs' fraud claim.

### IV.    California Civil Code § 2923.55

**E-FILED**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-1816-GHK (MRWx) | Date | July 2, 2015 |
|---|---|---|---|
| Title | *Tito Aguirre, et al. v. Wells Fargo Bank, N.A., et al.* | | |

        Section 2923.55 of the California Civil Code, which is a part of the Homeowner's Bill of Rights ("HBOR"), requires servicers to comply with various notice requirements before initiating foreclosure procedures.  Plaintiffs allege that Mr. Aguirre "never received a written statement regarding counseling and options to avoid foreclosures for service members or their dependents" in violation of subsection 2923.55(b)(1)(A); Mr. Aguirre "never received a written statement that he could request documents related to his loan, deed of trust, and payment history" in violation of subsection 2923.55(b)(1)(B); Wells Fargo "never contacted him by phone to discuss options to avoid foreclosure . . . on three different days" in violation of subsection 2923.55(f)(2)(A); and Wells Fargo "never informed him of his right to request any subsequent meeting" in violation of subsection 2923.55(b)(2).  (FAC at ¶¶ 39-42.)

        Plaintiffs' section 2923.55 claim fails because, according the FAC, the Loan "had been under review for loss mitigation options from July 29, 2010 through August 22, 2014."  (FAC at ¶ 45.) Several courts have found that the pre-foreclosure notice requirements imposed by HBOR are generally satisfied so long as there has been an effort "to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure."  Cal. Civ. Code § 2923.55(b)(2); *see also Hutchful v. Wells Fargo Bank, N.A.*, 471 Fed. App'x. 693, 695 (9th Cir. Mar. 12, 2012) ("[T]he district court properly construed the notice requirement of California Civil Code § 2923.5 as having been met by Hutchful's extensive discussions with Wells Fargo regarding loan modification."); *Newman v. Bank of New York Mellon*, 2013 WL 5603316, at *12 (E.D. Cal. Oct. 11, 2013) ("Going through a loan modification application, albeit one that appears to have been dysfunctional, is exploring one option against foreclosure. . . . [C]ourts have held that discussions or negotiations about, or considerations of, a loan modification meet the requirements of § 2923.5.").[2]  The reasoning for this is that the only remedy for a violation of section 2923.55, when no trustee's sale has occurred yet, is to delay foreclosure until the statute has been complied with.[3]  *See Bell v. Wells Fargo Bank, N.A.*, 2014 U.S. Dist. LEXIS 153170, at *10 (C.D. Cal. Oct. 28, 2014) ("[E]ven if Wells Fargo initially violated Cal. Civ. Code § 2923.5, Plaintiff has already received the remedy afforded by the statute for that violation."); *Intengan v. BAC Home Loans Servicing LP*, 214 Cal. App. 4th 1047, 1058 n.4 (2013) (noting "the well-established rule that there is no remedy for violation of Civil Code section 2923.5 except a delay of the foreclosure sale pending compliance with the statute").  If foreclosure alternatives have already been considered, as

_____

        [2] The cases cited above address California Civil Code § 2923.5, not California Civil Code § 2923.55.  But these two sections are not meaningfully different for our purposes.  Section 2923.5 is for entities that "foreclosed on 175 or fewer residential real properties" in California in the last year, while section 2923.55 is for entities that foreclosed on more than 175.  *Compare* Cal. Civ. Code § 2923.5(g) *with* Cal. Civ. Code § 2923.55(g).  Section 2923.5 used to cover both high and low-volume foreclosure entities, but that was changed in 2012.  *See* Lois M. Jacobs & Heather E. Stern, *Rights in Foreclosure to Protect Homeowners Facing Foreclosure, the National Mortgage Settlement and Homeowner's Bill of Rights Impose New Standards on Mortgage Servicers*, 35-JAN L.A. Law. 24, 26 (January 2013).  Wells Fargo does not dispute that it is an entity subject to section 2923.55.

        [3] A court can also award economics damages as a remedy, but only if "the violation was not corrected and remedied prior to the recordation of the trustee's deed upon sale."  Cal. Civ. Code § 2924.12(b).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-1816-GHK (MRWx) | Date | July 2, 2015 |
|---|---|---|---|
| Title | *Tito Aguirre, et al. v. Wells Fargo Bank, N.A., et al.* | | |

the FAC appears to allege, ordering Wells Fargo to comply with the notice requirements statute is a hollow gesture—Plaintiffs' claim is effectively moot.

The cases that Plaintiffs cite are not to the contrary. In *Intengan*, the California Court of Appeals specifically noted that the plaintiff's remedy was limited to a delay in foreclosure. 214 Cal. App. 4th at 1058 n.4. Since the plaintiff and the defendant had not yet explored foreclosure alternatives in that case, unlike here, that remedy was still available. *See id.* at 1049-50. *Skov v. U.S. Bank National Association* is distinguishable for the same reason. *See* 2 Cal. App. 4th 690, 696-97 (2012).

Plaintiffs also liken their case to *Woodring v. Ocwen Loan Servicing, LLC*, in which a court held that defendants did not engage in sufficient "loan modification discussions" to discharge their obligation under section 2923.5. 2014 WL 3558716, at *5 (C.D. Cal. July 18, 2014). But in that case, the plaintiff alleged that he had submitted loan modification applications and defendants simply ignored them. *Id.* The *Woodring* court understandably concluded that defendants could not rely on the mere fact that the borrower had submitted applications to claim that they had adequately "assess[ed] the borrower's financial situation and explore[d] options for the borrower to avoid foreclosure." Cal. Civ. Code § 2923.55(b)(2). There is no allegation in Plaintiffs' FAC that Wells Fargo ignored their loan modification applications, and therefore *Woodring* is distinguishable.

Wells Fargo's Motion to Dismiss is **GRANTED** as to Plaintiffs' section 2923.55 claim**.**

## V.    California Civil Code § 2924.11

Plaintiffs allege that Wells Fargo violated section 2924.11(f) of the California Civil Code, which provides that a servicer "shall not collect any late fees for periods during which a complete first lien loan modification application is under consideration or a denial is being appealed, the borrower is making timely modification payments, or a foreclosure prevention alternative is being evaluated or exercised." Plaintiffs claim, upon information and belief, that while the Loan was "under review for loss mitigation options from July 29, 2010 through August 22, 2014," Wells Fargo "improperly charged [Mr. Aguirre] for the statutorily forbidden late fees accrued during the[se] periods . . . and such late fees were added onto [his] unpaid principal balance." (FAC at ¶ 46.)

This claim fails because it is too conclusory and vague to satisfy *Twombly-Iqbal*'s plausibility standard. It is a bare assertion that Wells Fargo did something unlawful with no factual allegations whatsoever to support it. *See Ashcroft*, 556 U.S. at 678 ("The pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.") What facts led Plaintiffs to believe Wells Fargo was assessing late fees at the same time it was reviewing Mr. Aguirre for loss mitigation options? The FAC does not mention any applications for loan modifications or other foreclosure alternatives. Furthermore, Plaintiffs do not allege when the fees were charged improperly or what facts support their belief that fees have been improperly charged. The question of when the fees were charged may be particularly important, given that several courts have found that HBOR is not retroactive. *See, e.g.*, *Emick v. JPMorgan Chase Bank*, 2013 WL 3804039, at *3 (E.D. Cal. July 19, 2013) ("[HBOR] does not apply

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-1816-GHK (MRWx) | Date | July 2, 2015 |
|---|---|---|---|
| Title | *Tito Aguirre, et al. v. Wells Fargo Bank, N.A., et al.* | | |

retroactively.”); *McGough v. Wells Fargo Bank, N.A.*, 2012 WL 5199411, at *5 n.4 (N.D. Cal. Oct. 22, 2012) (“[T]here is no indication that [HBOR] is intended to be, or will be, applied retroactively.”). HBOR became effective on January 1, 2013, so if impermissible late fees were charged only before then, section 2924.11(f) would not apply.

Furthermore, as Wells Fargo notes, section 2924.11(f) forbids *collecting* late fees, not *charging* them. *See Davis v. U.S. Bank Nat. Ass’n*, 2015 WL 2124938, at *5 (C.D. Cal. May 6, 2015) (“Applying the ordinary meaning of the word ‘collect’ indicates that the California legislature intended to forbid lenders from compelling payment of late fees, not charging or assessing such fees, while borrowers’ loan modification applications were pending.”). By contrast, the preceding subsection of the same statute states that servicers may not “*charge* any application, processing, or other fee for a first lien loan modification or other foreclosure prevention alternative.” *See* Cal. Civ. Code § 2924.11(e) (emphasis added). “It is a well-established canon of statutory interpretation that the use of different words or terms within a statute demonstrates that Congress [or, in this case, the California legislature] intended to convey a different meaning for those words.” *See S.E.C. v. McCarthy*, 322 F.3d 650, 656 (9th Cir. 2003); *see also Davis*, 2015 WL 2124938, at *5 (“The proximity sub-sections [sic] (e) and (f), and their disparate terminology, indicates [sic] that the legislature was well aware of the distinction between charging and collecting fees.”). Accordingly, Plaintiffs’ claim fails for the additional reason that it has not alleged that Wells Fargo collected any improper fees.

Wells Fargo’s Motion to Dismiss is **GRANTED** as to Plaintiffs’ section 2924 claim.

**VI.     Breach of Contract**

Plaintiffs allege that Wells Fargo breached Covenant 3 of the DOT by refusing to accept the reinstatement amount Mr. Aguirre offered. (FAC at ¶ 51.) Covenant 3 states that “[u]nless applicable law requires otherwise, Lender will apply each of my payments . . . in the following order and for the following purposes: First, to pay prepayment charges due under the Secured Notes[;] Second, to pay any advances due to Lender . . .[;] Third, to pay the amounts due to Lender under Paragraph 2 above. . . ,” and so forth. (FAC, Ex. C. at 6.)

Plaintiffs’ breach of contract claim fails because Wells Fargo’s alleged refusal to accept the reinstatement amount is not a breach of Covenant 3. Covenant 3 is simply a promise to apply the Mr. Aguirre’s payments in a particular order to the charges, principal, and interest on the Loan—it does not say that the servicer is bound to accept payments. A refusal to accept payments may be unlawful for other reasons, but it is not unlawful based on what was promised in the DOT under Covenant 3.

Wells Fargo’s Motion to Dismiss is **GRANTED** as to Plaintiffs’ breach of contract claim.

**VII.    Breach of the Implied Covenant of Good Faith and Fair Dealing**

The implied covenant of good faith and fair dealing is based on the “long-standing rule that neither party will do anything which will injure the right of the other to receive the benefits of the

*E-FILED*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-1816-GHK (MRWx) | Date | July 2, 2015 |
|---|---|---|---|
| Title | *Tito Aguirre, et al. v. Wells Fargo Bank, N.A., et al.* | | |

agreement." *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 36 (1995) (internal quotation marks omitted); *Harm v. Frasher*, 181 C.A. 2d 405, 417 (1960) ("There is implied in every contract a covenant by each party not to do anything which will deprive the other parties thereto of the benefits of the contract."). It serves as "a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement." *Id.* Demonstrating a breach of the covenant requires "a showing of something beyond breach of the contractual duty itself." *Cal. Shoppers, Inc. v. Royal Globe Ins. Co.*, 175 Cal. App. 3d 1, 54 (1985) (internal quotation marks omitted).

Wells Fargo's argument as to why this claim should be dismissed is not entirely clear, but it appears to contend that there can be no breach of the implied covenant of good faith and fair dealing if there is no underlying breach of the contract. That is not the law. *See Carma Developers (Cal.), Inc. v. Marathon Dev. California, Inc.*, 2 Cal. 4th 342, 373 (1992) ("[B]reach of a specific provision of the contract is not a necessary prerequisite [to a claim for breach of the implied covenant]. Were it otherwise, the covenant would have no practical meaning, for any breach thereof would necessarily involve breach of some other term of the contract."). While the implied convent cannot be used to vary terms in the contract, such as to forbid conduct that is expressly permitted, it can be used to prohibit conduct that "though not prohibited, is nevertheless contrary to the contract's purposes and the parties' legitimate expectations." *Id.* at 373. "In light of this fundamental principal of contract law, a plaintiff raising a claim for the breach of the implied covenant must allege a reasonable relationship between the defendant's allegedly wrongful conduct and the express terms or underlying purposes of the contract." *See Jenkins v. JP Morgan Chase Bank, N.A.*, 216 Cal. App. 4th 497, 527-28 (2013).

Here, it goes without saying that the underlying purpose of a mortgage agreement is to set out terms for the borrower to repay the mortgage. If the servicer refuses to accept payment from the mortgagor "without justification" as the FAC alleges, (FAC at ¶ 26), that would frustrate the purpose of the agreement. While it may be true that there is no literal provision in the DOT which states that the servicer cannot refuse to accept a full reinstatement payment, there is no provision that says they can either. Assuming, as we must at this stage, that Mr. Aguirre tried to pay the entire amount that he owed, then Wells Fargo frustrated the purpose of the agreement by refusing to accept payment and breached the implied covenant of good faith and fair dealing. *See Morales v. Nationstar Mortgage LLC*, 2014 WL 6603166, at *6 (N.D. Cal. Nov. 20, 2014) (finding implied covenant claim adequately alleged where plaintiff claimed that servicer "refuse[d] to accept his timely mortgage payments" because "such a refusal clearly frustrates [the plaintiff's] rights to benefit from the Deed of Trust"); *Wolf v. Wells Fargo Bank, N.A.*, 2011 WL 4831208, at *4 (N.D. Cal. Oct. 12, 2011) (finding implied covenant claim adequately alleged where plaintiff claimed "that she made payments but defendants failed to credit them to her account, resulting in a notice of default").

Wells Fargo's Motion to Dismiss is **DENIED** as to Plaintiffs' implied covenant claim.

## VIII.   Promissory Estoppel

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-1816-GHK (MRWx) | Date | July 2, 2015 |
|---|---|---|---|
| Title | *Tito Aguirre, et al. v. Wells Fargo Bank, N.A., et al.* | | |

Plaintiffs contend that Wells Fargo's alleged representation that it would accept Mr. Aguirre's reinstatement payment is actionable under a promissory estoppel theory. The elements of a promissory estoppel claim are (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance. *Laks v. Coast Federal Savings & Loan Assn.*, 60 Cal. App. 3d 885, 890 (1976). Notably, despite the way the fourth element is phrased, a plaintiff is not in fact required to show that his injury causally resulted from his reliance, unlike in a fraud claim. Showing that his injury resulted from the defendant's failure to perform the promise is sufficient. *See US Ecology, Inc. v. State*, 129 Cal. App. 4th 887, 904 (2005) ("[B]ecause promissory estoppel claims are aimed solely at allowing recovery in equity where a contractual claim fails for a lack of consideration, and in all other respects the claim is akin to one for breach of contract, it is logical and proper to require that any claimed damages be caused by a defendant's breach of the agreement.").

Wells Fargo argues this promise is not clear and unambiguous because Plaintiff "fails to articulate the amount that was owed, the date the promise was made, and the deadline for submitting the payment." (Mot. at 10.) Wells Fargo cites no case that suggests promises must be that specific. The "clear and ambiguous" requirement for promissory estoppel requires only that the promise "be definite enough that a court can determine the scope of the duty and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages." *Ladas v. California State Auto. Assn.*, 19 Cal. App. 4th 761, 770 (1993). This alleged promise meets those two requirements. The scope of Wells Fargo's duty under the promise was to accept the payment so that the Loan could be reinstated. The damages will be the extra late fees and charges Mr. Aguirre incurred as a result of his Loan continuing to be in default after February 2013.[4]

Wells Fargo's Motion to Dismiss is **DENIED** as to Plaintiffs' promissory estoppel claim.

**IX.    Negligence**

To state a claim for negligence, Plaintiffs must plead: (1) Wells Fargo's duty of care to Plaintiffs; (2) breach of that duty; (3) causation; and (4) damages. *Truong v. Nguyen*, 156 Cal. App. 4th 865, 875 (2007). Plaintiffs allege that Wells Fargo breached a duty of care by "fail[ing] to accept Plaintiff's timely payment for a reinstatement" and "improperly appl[ying] late fees during a loan modification review." (FAC at ¶¶ 88-89.) As discussed above, the latter allegation is too vaguely and conclusorily pled to be actionable, but the former allegation may still be actionable and requires further analysis.

Wells Fargo argues that the negligence claim fails because it owed no duty of care to Plaintiff. In California, "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender

---

[4] Plaintiffs also contend that the breach of this promise caused the foreclosure, but the connection between the breach in early 2013 and the still-pending foreclosure is vague and largely unexplained. At this stage, however, as long as some damages can be fairly attributed to the breach, that is sufficient for Plaintiffs to state a viable claim.

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-1816-GHK (MRWx) | Date | July 2, 2015 |
|---|---|---|---|
| Title | *Tito Aguirre, et al. v. Wells Fargo Bank, N.A., et al.* | | |

of money." *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1096 (1991). That rule has been extended by some courts to loan servicers handling loan modification and requests for foreclosure relief. *See, e.g.*, *Lueras v. BAC Home Loans Servicing, L.P.*, 221 Cal. App. 4th 49, 67 (2013) (noting that "a loan modification . . . falls squarely within the scope of a lending institution's conventional role as a lender of money"). But other courts have distinguished *Nymark* and found that a mortgage lender or servicer may owe a duty of care when handling a distressed mortgage. *See Jolley v. Chase Home Fin., LLC*, 213 Cal. App. 4th 872, 898 (2013) (finding bank owed a duty of care in connection with a loan modification application for a construction loan); *Yau v. Deutsche Bank Nat'l Trust Co. Ams.*, 525 Fed. App'x 606, 608-09 (9th Cir. Cal. 2013) ("[T]he California courts of appeal appear to be of two minds on the application of th[e *Nymark*] general rule in cases involving offers of loan modifications handled negligently."); *Rijhwani v. Wells Fargo Home Mortgage, Inc.*, 2014 WL 890016, at *16 (N.D. Cal. Mar. 3, 2014) ("[F]ederal district courts sitting in California are divided on the question of when lenders owe a duty of care to borrowers in the context of the submission of and negotiations related to loan modification applications and foreclosure proceedings."). *But see Benson v. Ocwen Loan Servicing, LLC*, 562 F. App'x 567, 570 (9th Cir. 2014) (upholding dismissal of a negligence claim in the foreclosure context, citing *Lueras* with approval, and distinguishing *Jolley* as limited to loans made in the construction context).

In the absence of clear authority, many courts have turned to a six-factor test the California Supreme Court identified in *Biakanja v. Irving* to determine whether a financial institution owes a duty of care to a borrower. 49 Cal. 2d 647 (1958); *see also Jolley*, 213 Cal. App. 4th at 898; *Lueras*, 221 Cal. App. 4th at 63 (2013); *Rijhwani*, 2014 WL 890016, at *14. Those factors are

> (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm.

*Id.* at 650. Here, these factors generally weigh in the Plaintiffs' favor: (1) the decision whether to accept or reject the reinstatement payment was presumably intended to affect Mr. Aguirre; (2) the harm to Mr. Aguirre would have been easily foreseeable from the refusal to accept the payment; (3) Mr. Aguirre would have been virtually certain to suffer injury if the payment was not accepted; (4) the connection between Wells Fargo's conduct and the injury suffered would have been close; (5) some moral blame undoubtedly attaches to Wells Fargo's refusal to accept a payment from a borrower; (6) and imposing a duty on Wells Fargo to exercise due care when borrowers make reinstatement payments would prevent future harms caused by servicers carelessly failing to apply payments that would otherwise bring the borrower out of default.

Finding that Wells Fargo owed Plaintiffs a duty of care is consistent with other decisions upholding negligence claims in the foreclosure context. For example, we have held, as have other courts, that a borrower may assert a negligence claim where the lender mishandled the borrower's loan

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-1816-GHK (MRWx) | Date | July 2, 2015 |
|---|---|---|---|
| Title | *Tito Aguirre, et al. v. Wells Fargo Bank, N.A., et al.* | | |

modification application. *See Salazar v. U.S. Bank Nat. Ass'n*, 2015 WL 1542908, at *10 (C.D. Cal. Apr. 6, 2015) (King, J.) (finding negligence claim adequately alleged where servicer made misrepresentations to the borrower regarding her submitted loan application and failed to respond to the application in a timely manner); *see also Alvarez v. BAC Home Loans Servicing, L.P.*, 228 Cal. App. 4th 941, 948 (2014) (upholding negligence claim where servicer allegedly mishandled loan modification application); *Shapiro v. Sage Point Lender Servs.*, 2014 WL 5419721, at *9-10 (C.D. Cal. Oct. 24, 2014) (same); *Garcia v. Ocwen Loan Servicing, LLC*, 2010 WL 1881098, at *3 (N.D. Cal. May 10, 2010) (same). Alleging that a servicer "mishandled" a reinstatement payment is not much different from alleging that the servicer mishandled a loan modification application. In both situations, the servicer's failure to perform a basic function of its job with due care caused foreseeable harm to the borrower. Therefore, in both situations, negligence is an appropriate legal theory for the borrower to rely on.

Accordingly, Wells Fargo's Motion to Dismiss is **DENIED** as to Plaintiffs' negligence claim.

## X.     Truth in Lending Act

Plaintiffs allege that Wells Fargo violated 12 C.F.R. § 1026.36(c) under the Truth in Lending Act ("TILA"), which generally requires a servicer to accept and credit payments from mortgagors at the time they are received. Plaintiffs' claim is time-barred. TILA claims are subject to a one-year statute of limitations. 15 U.S.C. § 1640(e). Wells Fargo refused to accept Mr. Aguirre's payment some time around February 2013. (FAC at ¶ 24.) Thus, this incident happened more than two years ago, well beyond the statute of limitations.

Wells Fargo's Motion to Dismiss is **GRANTED** as to Plaintiffs' TILA claim.

## XI.     Federal Debt Collection Practices Act

To establish a claim for violation of the Federal Debt Collection Practices Act ("FDCPA"), a plaintiff must show: (1) that she is a consumer within the meaning of 15 U.S.C. §§ 1692a(3) and 1692c(d); (2) that the debt arises out of a transaction entered into for personal purposes; (3) that defendant is a debt collector within the meaning of § 1692a(6); and (4) that defendant violated one of the provisions of the FDCPA, §§ 1692a-1692o. *See  Ananiev v. Aurora Loan Servs., LLC*, 2012 WL 2838689, at *3 (N.D. Cal. July 10, 2012). Plaintiffs allege that Wells Fargo violated the FDCPA by making repeated calls to collect the debt owed on the Loan.

Plaintiffs' FDCPA claim fails for two reasons. One, it is not adequately pled. Plaintiffs' allegations concerning the "repeated" and "continuous" phone calls are vague and conclusory. Plaintiffs are merely parroting the language of 15 U.S.C. § 1692d(5), which prohibits "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt" including "[c]ausing a telephone to ring . . . repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." Plaintiffs fail to say anything in particular

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-1816-GHK (MRWx) | Date | July 2, 2015 |
|---|---|---|---|
| Title | *Tito Aguirre, et al. v. Wells Fargo Bank, N.A., et al.* | | |

about these alleged telephone calls—when they were made, who made them, or why Plaintiffs believe they were intended to annoy or harass (rather than, say, to discuss alternatives to foreclosure).

Two, the claim fails because Plaintiffs have not alleged facts sufficient to show that Wells Fargo was acting as "debt collector" within the meaning of the statute.  Wells Fargo is, according to the FAC, the "successor-in-interest to Plaintiffs' original lender," the "beneficiary of the note and deed of trust," and "Plaintiffs' loan servicer."  (FAC at ¶ 4.)  The FDCPA defines the phrase "debt collector" to include: (1) "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts," and (2) any person "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  The FAC does not plead facts from which we could infer that (1) Wells Fargo's principal business is the collection of debts or (2) Wells Fargo regularly collects the debts "owed or due another."  Based on the limited information available from the FAC, Wells Fargo's principal business appears to be servicing loans, and the only debt it is alleged to be collecting is a debt that Mr. Aguirre owed directly to Wells Fargo.  *See Schlegel v. Wells Fargo Bank, NA*, 720 F.3d 1204, 1209 (9th Cir. 2013) (concluding that plaintiff's complaint failed to allege facts sufficient to conclude that Wells Fargo was a debt collector under either definition set forth in the FDCPA).

Wells Fargo's Motion to Dismiss is **GRANTED** as to Plaintiff's FDCPA claim.

**XII.    Quiet Title**

To state a quiet title claim, a plaintiff generally must allege that she tendered the amount outstanding on her defaulted loan or that she was excused from doing so.[5]  *See Aguilar v. Bocci*, 39 Cal. App. 3d 475, 477 (1974).  Tender is not required where: (1) the borrower attacks the validity of the underlying debt; (2) where the person seeking to set aside the sale has a counter-claim or set-off against the beneficiary; (3) where it would be "inequitable to impose such a condition on the party challenging the sale"; and (4) where the trustee's deed is "void on its face."  *Lona v. Citibank, N.A.*, 202 Cal. App. 4th 89, 112-13 (2011).  In their Opposition, Plaintiffs argue that two exceptions apply here: (1) Plaintiffs are attacking the underlying validity of the debt and (2) it would be inequitable to impose the tender requirement.  We disagree.

There is no challenge to the underlying the validity of the debt based on the facts alleged. Plaintiffs do not dispute that Mr. Aguirre took out the Loan or that Wells Fargo is rightfully owed payments and interest under the DOT.  A challenge to the "underlying debt" means a challenge to the original debt secured by the DOT, not a challenge to any other fees or charges incurred at later times. *See Sowinski v. Wells Fargo Bank, N.A.*, 2013 WL 706825, at *3 (N.D. Cal. Feb. 26, 2013) (borrower

---

[5] Plaintiffs contend that tender is not required for claims under HBOR.  *See Bingham v. Ocwen Loan Servicing, LLC*, 2014 WL 1494005, at *6 (N.D. Cal. Apr. 16, 2014); *Mabry v. Sup. Ct.*, 185 Cal. App. 4th 208, 225 (2010).  Even assuming that is true, it is a non sequitur.  Plaintiffs' quiet title claim does not arise under HBOR.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-1816-GHK (MRWx) | Date | July 2, 2015 |
|---|---|---|---|
| Title | *Tito Aguirre, et al. v. Wells Fargo Bank, N.A., et al.* | | |

excused from tender rule where he alleged that the "underlying loan transaction was unconscionable"); *Soares v. ReconTrust Co.*, 2012 WL 1901234, at *10 (N.D. Cal. May 25, 2012) (finding borrower could be excused from the tender requirement if he could adequately allege that "defendants fraudulently induced him to agree to the loan by misstating his income on his loan application").

As for the claim that imposing a tender requirement is inequitable, Plaintiffs do not point to anything specific about their case that would make the requirement inequitable. Plaintiffs cite *Humboldt Savings Bank v. McCleverty* as supporting the application of the equity exception here, but that case is distinguishable. 161 Cal. 285 (1911). In *Humboldt*, the defendant lived in a home on a piece of property with her husband. *Id.* at 287. The defendant's husband (but not the defendant) had taken out a sizeable loan to buy both the homestead property and another piece of property at the same time. *Id.* When the husband died and the loan defaulted, the bank foreclosed on both properties. *Id.* The defendant sought to have the sale set aside in order to save her home, arguing among other things that the value of the non-homestead property was adequate in and of itself to satisfy the loan amount. *Id.* at 291. The court found that it would be inequitable to require her to tender the full amount of the loan in order to assert a claim:

> The property which she was seeking to save from the effect of the sale was worth, according to the finding of the court, $5,000, while the property in which she had no interest was worth over $57,000. The debt amounted to $57,618.30. It must be apparent, from a mere statement of these facts, that there is no equity in the claim that, in order to be enabled to attack an unauthorized sale of her five-thousand-dollar homestead, she must pay, or offer to pay, a debt of $57,000, for which she is in no way liable.

*Id.* The facts of *Humboldt* are not similar to the facts here. There is only one piece of property at issue in this case. There is no inequitable disparity between the amount of debt outstanding and the value of the property that Plaintiffs seek to save. And unlike in *Humboldt*, one of the people seeking to quiet title to the Property, Mr. Aguirre, is fully liable for the amount of the debt. Mrs. Aguirre may not share in that liability but, given that she acquired her interest in the property as a gift and as part of an apparent effort to delay foreclosure by filing a series of bankruptcy petitions, there is nothing inequitable in requiring her to meet the tender requirement as well.

Accordingly, Wells Fargo's Motion to Dismiss is **GRANTED** as to Plaintiff's quiet title claim.

### XIII.  Declaratory Relief

Declaratory relief should be denied if it will "neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v Washington*, 759 F.2d 1353, 1356-57 (9th Cir. 1985). A claim for declaratory relief is unnecessary where an adequate remedy exists under some other cause of action. *See Minnesota Life Ins. Co. v. Philpot*, 2012 WL 4486311, at *11 (S.D. Cal. Sept. 27, 2012). Plaintiffs request that we declare that "a judicial determination of the rights, obligations, and

*E-FILED*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-1816-GHK (MRWx) | Date | July 2, 2015 |
|---|---|---|---|
| Title | *Tito Aguirre, et al. v. Wells Fargo Bank, N.A., et al.* | | |

interest of the parties as to the Subject Property, the foreclosure process, and the trustee's sale. . . ." (FAC at ¶ 144.)  This request is duplicative of the relief sought through Plaintiffs' other claims.

Wells Fargo's Motion to Dismiss is **GRANTED** as to Plaintiff's declaratory relief claim.

**XIV.   Unfair Competition Law**

California's Unfair Competition Law ("UCL") broadly prohibits unlawful, unfair, and fraudulent business acts.  *Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1212 (9th Cir. 1998).  Plaintiffs attempt to assert a UCL claim under all three prongs.

    **A.   Unlawful**

Unlawful business practices are "anything that can properly be called a business practice and that at the same time is forbidden by law."  *Nat'l Rural Telecommc'ns Coop. v. DIRECTV, Inc.*, 319 F. Supp. 2d 1059, 1074 (C.D. Cal. 2003).  "Under its 'unlawful' prong, the UCL borrows violations of other laws . . . and makes those unlawful practices actionable under the UCL."  *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (2007).  "Thus, a violation of another law is a predicate for stating a cause of action under the UCL's unlawful prong."  *Id.*  Plaintiffs allege that Wells Fargo violated the unlawful prong of the UCL by (1) making the false statements that it would accept the reinstatement payment, (2) failing to accept the reinstatement payment, (3) improperly applying late fees, and (4) "repeatedly and continuously ma[king] harassing phone calls to Plaintiffs to collect the debt after Defendants failed to honor to [sic] reinstate the loan."  (FAC at ¶ 99.)

Wells Fargo argues that these allegations of "unlawful business" practices are inadequate because Plaintiffs cannot independently "state any viable claims against Wells Fargo based on such allegations."  (Mot. at 15.)  That is true as to allegations 1, 3, and 4, but not 2, which is actionable, as discussed, under either a negligence, implied covenant, or promissory estoppel theory.  However, those claims all arise under common law, and common law claims cannot be used as the predicate for an unlawful UCL claim.  *See Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010) ("Shroyer must also allege that New Cingular engaged in a business practice 'forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court made.'  In other words, a common law violation such as breach of contract is insufficient . . . .").  Accordingly, Plaintiffs fail to state a UCL claim under the unlawful prong.

    **B.   Unfair**

An unfair business practice is one "that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition."  *Cal-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999).  Plaintiffs assert that Wells Fargo's activities—including "charging excessive or improper fees," "making incessant phone calls," refusing to

**E-FILED**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-1816-GHK (MRWx) | Date | July 2, 2015 |
|---|---|---|---|
| Title | *Tito Aguirre, et al. v. Wells Fargo Bank, N.A., et al.* | | |

accept the reinstatement payment, and "failing to work with Plaintiff Tito Aguirre in good faith [to] avoid the foreclosure of the Subject Property"—were unfair because they "violate public policy favoring home preservation of the borrowers." (FAC at ¶ 107.) Plaintiffs do not cite any case recognizing such a policy, much less a case recognizing such a policy in the context of the unfairness prong of the UCL. Accordingly, Plaintiffs have failed to state a UCL claim under the unfair prong.

###### C.    Fraudulent

Fraudulent business practices are ones where members of the public are likely to be deceived. *Comm. on Children's Television v. Gen. Foods Corp.*, 35 Cal. 3d 197, 214 (1983). UCL claims premised on allegations of fraudulent conduct are subject to Rule 9(b)'s heightened pleading standard. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). As discussed, Plaintiffs have not adequately alleged a fraudulent misrepresentation by Wells Fargo. Plaintiffs appear to make a few new assertions of fraud in the context of the UCL claim, but these assertions are also too vague for Rule 9(b) pleading. (*See* FAC at ¶ 109(a), (d) (claiming Wells Fargo "provid[ed] false or misleading information in response to inquiries" and "continu[ed] with foreclosure proceedings while Plaintiffs were in good faith actively pursuing a loss mitigation alternative offered by Defendants").) Accordingly, Plaintiffs fail to state a UCL claim under the fraudulent prong.

Since Plaintiff have not stated a claim under any of the three prongs of the UCL, Wells Fargo's Motion to Dismiss is **GRANTED** as to Plaintiff's UCL claim.

###### XV.    CONCLUSION

Based on the foregoing, Wells Fargo's Motion to Dismiss the FAC is **GRANTED in part** and **DENIED in part**. Since amendment may not necessarily be futile as to Plaintiffs' fraud, California Civil Code, breach of contract, FDCPA, quiet title, and UCL claims, they are **DISMISSED without prejudice and with leave to amend**. Amendment would be futile as to Plaintiffs' TILA and declaratory relief claims, so those claims are **DISMISSED with prejudice**. Plaintiffs' negligence, implied covenant, and promissory estoppel claims are not dismissed.

Should Plaintiffs elect to file a Second Amended Complaint ("SAC"), they **SHALL** do so within **thirty days hereof**. Plaintiffs are advised to carefully consider what legal theories they need to proceed in this matter and to avoid taking a kitchen-sink approach to pleading claims. Plaintiffs are also cautioned that any potential amendments must comply with Federal Rule of Civil Procedure 11(b), which provides in pertinent part:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

*E-FILED*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-1816-GHK (MRWx) | Date | July 2, 2015 |
|----------|-----------------------|------|--------------|
| Title | *Tito Aguirre, et al. v. Wells Fargo Bank, N.A., et al.* | | |

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

Plaintiffs' failure to file an SAC within thirty days hereof will be deemed their admission that amendment is futile as to those claims, and they will be dismissed with prejudice. In that event, Wells Fargo **SHALL** file an Answer to the remaining claims in the FAC **within fourteen days thereof**. If Plaintiffs file an SAC, Defendants **SHALL** respond to it **within twenty-one days thereof**.

**IT IS SO ORDERED.**

_____ : _____

Initials of Deputy Clerk        AB for Bea

_____